922 F.2d 984
 136 L.R.R.M. (BNA) 2065, 59 USLW 2407,
118 Lab.Cas. P 10,548,
Bankr. L. Rep. P 73,747
 In re IONOSPHERE CLUBS, INC. and Eastern Airlines, Inc., Debtors.
Martin R. SHUGRUE, Jr., As Chapter 11 Trustee for Eastern
Airlines, Inc., Appellant,
v.
AIR LINE PILOTS ASSOCIATION, INTERNATIONAL, Appellee.
 Nos. 580, 581, Dockets 90-5033, 90-5035.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 14, 1990.
Decided Dec. 21, 1990.
 
 Bruce R. Zirinsky, New York City (Laura M. Sillins, Matthew A. Cantor, and Weil, Gotshal & Manges, New York City, Joseph L. Manson, III, and Verner, Liipfert, Bernhard, McPherson & Hand, Washington, D.C., on the brief), for appellant Martin R. Shugrue, Jr., Chapter 11 Trustee for Eastern Airlines, Inc.
 Richard M. Seltzer, New York City (James L. Linsey, Russell S. Hollander, Richard B. Miller, and Cohen, Weiss & Simon, New York City, on the brief), for appellee Air Line Pilots Ass'n, Intern.
 Before MINER and TIMBERS, Circuit Judges, and SPRIZZO, District Judge, for the Southern District of New York, sitting by designation.
 TIMBERS, Circuit Judge:
 
 
 1
 Appellant Martin R. Shugrue, Jr., Chapter 11 Trustee for Eastern Airlines, Inc. (Eastern), appeals from an order entered April 10, 1990 in the Southern District of New York, Robert W. Sweet, District Judge, reversing two orders of the bankruptcy court that stayed attempts by the Air Line Pilots Association, International (ALPA) to arbitrate a dispute arising out of their collective bargaining agreement with Eastern and to prosecute a lawsuit seeking to enjoin Eastern's practice of wet-leasing aircraft and crews as violative of the collective bargaining agreement.
 
 
 2
 On March 9, 1989, Eastern filed a petition for reorganization under Chapter 11 of the Bankruptcy Code. Subsequently, ALPA, which was engaged in a sympathy strike against Eastern, sought relief from the automatic stay to initiate an arbitration to determine whether labor protective provisions (LPPs) in the collective bargaining agreement had been triggered by Eastern's merger with Continental. The bankruptcy court, Burton R. Lifland, Chief Bankruptcy Judge, denied that petition. In re Ionosphere Clubs, Inc., 105 B.R. 765 (Bankr. S.D.N.Y.1989) (the LPP-decision).
 
 
 3
 After the strike began and after Eastern filed its petition for reorganization, Eastern entered into wet-lease contracts with Continental. Wet-leasing is a practice by which one airline leases aircraft and crews from another airline. ALPA commenced an action in the Southern District of Florida, seeking to enjoin this practice as violative of its collective bargaining agreement with Eastern. In response, Eastern commenced an adversary proceeding in the bankruptcy court to enjoin ALPA from prosecuting the Florida action. The bankruptcy court, Burton R. Lifland, Chief Bankruptcy Judge, held that ALPA's action was violative of the automatic stay and enjoined its prosecution pursuant to its powers under 11 U.S.C. Sec. 105(a) (1988). In re Ionosphere Clubs, Inc., 105 B.R. 773 (Bankr.S.D.N.Y.1989) (the wet-lease decision).
 
 
 4
 ALPA appealed both bankruptcy court orders to the district court pursuant to 28 U.S.C. Sec. 158(a) (1988). The district court reversed them both. The court held that 11 U.S.C. Sec. 1113(f) (1988) precludes the application of the automatic stay and the bankruptcy court's equitable powers to any proceeding brought by a union to enforce a collective bargaining agreement against a debtor, unless and until the debtor complies with the provisions of Sec. 1113, which regulates the termination or modification of collective bargaining agreements by a debtor in bankruptcy. In re Ionosphere Clubs, Inc., 114 B.R. 379 (S.D.N.Y.1990).
 
 
 5
 On appeal, Eastern contends that (1) Sec. 1113(f) of the Bankruptcy Code does not preclude application of the automatic stay provisions of Sec. 362 or of the bankruptcy court's equitable powers under Sec. 105 to ALPA's attempts to enforce the collective bargaining agreement outside the bankruptcy court; and (2) the bankruptcy court decisions should be reinstated.
 
 
 6
 For the reasons that follow, we affirm the district court's order as to the LPP-decision and reverse its order as to the wet-lease decision. We remand the case to the district court for further consideration.
 
 I.
 
 7
 We shall summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.
 
 
 8
 This appeal involves two issues in a labor dispute between Eastern and ALPA. At all times relevant to this appeal, the relationship between the two parties was governed by a collective bargaining agreement dated February 23, 1986 and entered into pursuant to the Railway Labor Act (RLA), 45 U.S.C. Sec. 151 et seq. (1988).
 
 
 9
 On March 4, 1989, the International Association of Machinists and Aerospace Workers (IAM) began a primary strike against Eastern. Soon thereafter, ALPA and the Transportation Workers Union of America struck Eastern in sympathy with the IAM. On March 9, 1989, Eastern filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the Southern District of New York. On June 21, 1989, Eastern filed a motion in the bankruptcy court to reject the collective bargaining agreement pursuant to Sec. 1113. Eastern withdrew that motion on July 26, 1989. At the time the bankruptcy court reached the decisions under review on the instant appeal, no application under Sec. 1113 to terminate or modify the collective bargaining agreement was pending before it. Martin R. Shugrue, Jr. was appointed Trustee for Eastern on April 19, 1990.
 
 
 10
 (A)
 
 
 11
 The collective bargaining agreement contained LPPs designed to protect ALPA members in the event of a merger. The collective bargaining agreement provided that disputes arising from it would be submitted to arbitration and it set forth a procedure governing that process. Eastern was sold to Texas Air Corporation (Texas Air) within days after the collective bargaining agreement became operative. After Eastern's acquisition by Texas Air, a dispute arose as to the operation of the LPPs. On June 10, 1986, Eastern commenced an action in the Southern District of Florida, seeking a declaration that the collective bargaining agreement was invalid. That contention was rejected and Eastern was ordered to arbitrate the dispute. Eastern Air Lines, Inc. v. Air Line Pilots Ass'n, Int'l, 670 F.Supp. 947 (S.D.Fla.1987), aff'd, 861 F.2d 1546 (11 Cir.1988).
 
 
 12
 On August 6, 1986, pursuant to the provisions of the collective bargaining agreement, ALPA filed a grievance with the System Board of Adjustments, the body established to hear and determine grievances based on disputes concerning the collective bargaining agreement. On March 8, 1989, the arbitration panel ruled in favor of ALPA. It concluded that the LPPs provided that, in the event of a merger, seniority lists were to be merged. The panel did not decide whether a merger had taken place that would have triggered the LPPs. The decision was not signed by all the panel members until the next day, approximately seven minutes after Eastern filed its bankruptcy petition.
 
 
 13
 On July 21, 1989, ALPA filed a motion in the bankruptcy court, seeking a determination that the arbitration decision became effective prior to Eastern's Chapter 11 filing and, thus, was not affected by the automatic stay, or, in the alternative, it sought relief from the automatic stay to implement the arbitration decision. ALPA supplemented its motion requesting relief from the automatic stay with a request to commence a second arbitration to determine whether Eastern and Continental had merged, thus triggering the LPPs. Eastern did not oppose the request for relief from the stay to implement the first arbitration decision, but did oppose the supplemental request to commence a second arbitration.
 
 
 14
 The bankruptcy court lifted the stay for the limited purpose of formally issuing the arbitration decision interpreting the LPPs, but declined to lift the stay for the purpose of allowing ALPA to initiate an arbitration to determine whether a merger had taken place. In re Ionosphere Clubs, Inc., supra, 105 B.R. 765. The court reasoned that issues raised in the arbitration would duplicate efforts being made by the examiner it had appointed. Id. at 771.
 
 
 15
 (B)
 
 
 16
 Wet-leasing refers to the practice of one airline leasing aircraft and crews from another airline. The collective bargaining agreement prohibited Eastern from engaging in this practice. It required Eastern to employ ALPA pilots on the Eastern pilot's system seniority list to perform its flying. In August 1989, since its pilots were on strike and replacement pilots were still being trained, Eastern entered into wet-lease contracts with Continental.
 
 
 17
 On September 1, 1989, ALPA commenced an action in the Southern District of Florida (the Florida action), seeking to enjoin the wet-leasing as violative of the collective bargaining agreement and of the RLA. The district court set the case on an expedited discovery schedule. On September 25, 1989, Eastern commenced an adversary proceeding in the bankruptcy court, seeking to enjoin ALPA from prosecuting the Florida action. In its complaint, Eastern alleged that its wet-lease contracts were reasonably necessary to its continued operation during the strike.
 
 
 18
 The bankruptcy court held that the Florida action violated the provisions of the automatic stay, specifically, 11 U.S.C. Sec. 362(a)(3) (1988), which provides for a stay of "any act ... to exercise control over property of the estate." In re Ionosphere Clubs, supra, 105 B.R. at 779. The court determined that Eastern's actions were "reasonably necessary" to its continued operation during the strike and were protected under the doctrine announced in Brotherhood of Ry. & S.S. Clerks v. Florida East Coast Ry., 384 U.S. 238, 248, 86 S.Ct. 1420, 1425, 16 L.Ed.2d 501 (1966). In re Ionosphere Clubs, supra, 105 B.R. at 780. Finally, the bankruptcy court enjoined further prosecution of the Florida action pursuant to its powers under Sec. 105(a). Id.
 
 
 19
 (C)
 
 
 20
 ALPA appealed both bankruptcy court orders to the district court pursuant to 28 U.S.C. Sec. 158(a) (1988). The appeal from the LPP decision was assigned to Judge Sweet. The appeal from the wet-lease decision was assigned to Judge Leval. Subsequently, the two appeals were consolidated before Judge Sweet.
 
 
 21
 On April 10, 1990, the district court entered its opinion and order, reversing the orders of the bankruptcy court in both cases. In re Ionosphere Clubs, Inc., 114 B.R. 379 (S.D.N.Y.1990). The district court reasoned that Sec. 1113 of the Bankruptcy Code was intended to be the "exclusive ... means in the Bankruptcy Code by which a debtor could modify or reject its collective bargaining contract obligations." Id. at 396. The court concluded that application of the automatic stay to bar enforcement of a collective bargaining agreement outside the bankruptcy court was precluded by Sec. 1113(f), which provides that no provision of the Bankruptcy Code other than Sec. 1113 should be construed to permit a trustee unilaterally to alter or terminate a collective bargaining agreement. Id. at 400.
 
 
 22
 This appeal followed.
 
 II.
 
 23
 Initially, we set forth our standard of review. The district court order is subject to plenary review. In re Hanratty, 907 F.2d 1418, 1423 (3 Cir.1990); In re Johnson, 901 F.2d 513, 516 (6 Cir.1990); In re Manville Forest Prods. Corp., 896 F.2d 1384, 1388 (2 Cir.1990). "This court exercises the same review over the district court's decision that the district court may exercise [over the bankruptcy court's decision]." Brown v. Pennsylvania State Employees Credit Union, 851 F.2d 81, 84 (3 Cir.1988). Accordingly, we review conclusions of law de novo, and findings of fact under a clearly erroneous standard. In re Manville, supra, 896 F.2d at 1388; Brown, supra, 851 F.2d at 84.
 
 III.
 
 24
 This appeal raises the question of the effect of Sec. 1113 of the Bankruptcy Code on the application of the automatic stay provisions of Sec. 362 of the Bankruptcy Code to non-bankruptcy proceedings to enforce a collective bargaining agreement. Resolution of this dispute requires us to consider the intent of Congress in enacting these sections.
 
 
 25
 (A)
 
 
 26
 Section 362 of the Bankruptcy Code provides that the filing of a petition in bankruptcy automatically stays certain actions directed against the debtor or against the debtor's property. 11 U.S.C. Sec. 362(a) (1988). The automatic stay provisions promote two principal purposes of the Bankruptcy Code. First, the automatic stay "provides the debtor with 'a breathing spell from his creditors.' " Teachers Ins. & Annuity Ass'n of America v. Butler, 803 F.2d 61, 64 (2 Cir.1986) (quoting legislative history); In re Petrusch, 667 F.2d 297, 299 (2 Cir.1981) (same), cert. denied, 456 U.S. 974, 102 S.Ct. 2238, 72 L.Ed.2d 848 (1982). In addition, the automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas. The Bankruptcy Code "provide[s] for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court, and [this policy] is effectuated by Sections 362 and 105 of the Code." In re Chateaugay Corp., 109 B.R. 613, 621 (S.D.N.Y.1990); see also Hunt v. Bankers Trust Co., 799 F.2d 1060, 1069 (5 Cir.1986); Holland America Ins. Co. v. Succession of Roy, 777 F.2d 992, 995 (5 Cir.1985).
 
 
 27
 (B)
 
 
 28
 We turn next to Sec. 1113 of the Bankruptcy Code. Our discussion of that section must begin with the Supreme Court's decision in National Labor Relations Bd. v. Bildisco & Bildisco, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984). In Bildisco, the Court held, in part, that the filing of a petition in bankruptcy rendered collective bargaining agreements unenforceable. Id. at 532, 104 S.Ct. at 1199. The debtor, therefore, could terminate unilaterally the collective bargaining agreement or alter its provisions prior to seeking bankruptcy court approval for rejection of an executory contract under Sec. 365(a). Id. at 533-34, 104 S.Ct. at 1199-1200.
 
 
 29
 In response to Bildisco, Congress enacted Sec. 1113 of the Bankruptcy Code as part of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), Pub.L. No. 98-353, 98 Stat. 333, 390-91 (1984). Section 1113 governs the means by which a debtor may assume, reject or modify its collective bargaining agreement. 11 U.S.C. Sec. 1113(a), (b) and (e) (1988). It ensures that the debtor attempt to negotiate with the union prior to seeking to terminate a collective bargaining agreement. Sec. 1113(b). In the event such negotiations fail, it delineates the standard by which an application by the debtor to terminate the collective bargaining agreement is to be judged by the bankruptcy court and establishes a time frame in which this determination is to be made. 11 U.S.C. Sec. 1113(c), (d) (1988). Subsection (f) provides:
 
 
 30
 "No provision of [the Bankruptcy Code] shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of [section 1113]."
 
 
 31
 11 U.S.C. Sec. 1113(f) (1988).
 
 
 32
 In discerning Congress' intent in enacting Sec. 1113, we look first to the language of the statute. United States v. Bonanno Organized Crime Family of La Cosa Nostra, 879 F.2d 20, 21 (2 Cir.1989). Subsection 1113(a) provides that a debtor "may assume or reject a collective bargaining agreement only in accordance with the provisions of [section 1113]." Subsection 1113(f) evinces an intent that other provisions of the Bankruptcy Code are inoperable to the extent that they allow a debtor to bypass the requirements of Sec. 1113. The language of the statute indicates that Congress intended Sec. 1113 to be the sole method by which a debtor could terminate or modify a collective bargaining agreement and that application of other provisions of the Bankruptcy Code that allow a debtor to bypass the requirements of Sec. 1113 are prohibited.
 
 
 33
 This conclusion is supported by the legislative history of Sec. 1113. There are no committee reports accompanying the enactment of Sec. 1113. We look therefore to statements made by sponsors of the legislation on the floor of Congress for an expression of legislative intent. E.g., Regents of the University of California v. Public Employment Relations Bd., 485 U.S. 589, 595-97, 108 S.Ct. 1404, 1408-10, 99 L.Ed.2d 664 (1988); North Haven Bd. of Educ. v. Bell, 456 U.S. 512, 527, 102 S.Ct. 1912, 1921, 72 L.Ed.2d 299 (1982). In support of the legislation, Senator Packwood, one of its sponsors, stated:
 
 
 34
 "The amendments also prohibit the trustee from unilaterally altering or terminating the labor agreement prior to compliance with the provisions of the section. This provision encourages the collective bargaining process, so basic to federal labor policy. The provision overrules the 5-4 portion of the Supreme Court's Bildisco decision and means that the labor contract is enforceable and binding on both parties until a court approved rejection or modification."
 
 
 35
 130 Cong. Rec. S8898 (daily ed. June 29, 1984).
 
 
 36
 Finally, the context in which Sec. 1113 was enacted supports our conclusion. It is not disputed that Sec. 1113 was enacted as the legislative response to the Supreme Court's decision in Bildisco. In re Unimet Corp., 842 F.2d 879, 882 (6 Cir.), cert. denied, 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988); Truck Drivers Local 807 v. Carey Transp., Inc., 816 F.2d 82, 88 (2 Cir.1987); In re Century Brass Prods., Inc., 795 F.2d 265, 272 (2 Cir.1986). It stands to reason, therefore, that the events that took place in Bildisco are representative of the ill that Congress sought to cure in enacting Sec. 1113.
 
 
 37
 In Bildisco, a debtor ignored "its obligations under the collective-bargaining agreement, including the payment of health and pension benefits and the remittance to the Union of dues collected under the agreement ... [and] refused to pay wage increases called for in the collective-bargaining agreement." Bildisco, supra, 465 U.S. at 518, 104 S.Ct. at 1192. Those alterations were made prior to seeking relief from those obligations in the bankruptcy court and absent negotiation with the union.
 
 
 38
 "Section 1113(f) reverses that part of Bildisco & Bildisco which held that a trustee or debtor in possession was not legally bound to a collective bargaining agreement subsequent to the filing date and prior to the court determination of the application for authority to reject such agreement. The trustee or debtor in possession must adhere to the terms of the collective bargaining agreement unless the court approves the application for rejection pursuant to section 1113(c) or grants interim relief under section 1113(e)."
 
 
 39
 5 Collier on Bankruptcy, p 1113.01 at 1113-11 (15th ed. 1990).
 
 
 40
 We conclude, from the language of the statute, statements made by the sponsors of the legislation, and the context in which it was enacted, that Congress intended that a collective bargaining agreement remain in effect and that the collective bargaining process continue after the filing of a bankruptcy petition unless and until the debtor complies with the provisions of Sec. 1113. E.g., In re Unimet Corp., supra, 842 F.2d at 884 ("section 1113 unequivocally prohibits the employer from unilaterally modifying any provision of the collective bargaining agreement"); In re Century Brass Prods., supra, 795 F.2d at 272 (Sec. 1113 "created an expedited form of collective bargaining with several safeguards designed to insure that employers did not use Chapter 11 as medicine to rid themselves of corporate indigestion"); In re Mile Hi Metal Sys., Inc., 51 B.R. 509, 510 (Bankr.D.Colo.1985) ("[o]ne of the primary purposes of [section 1113] was to emphasize the private collective bargaining process in an effort to avoid recourse to the bankruptcy court").
 
 
 41
 We construe subsection 1113(f) quite literally. We hold that it was meant to prohibit the application of any other provision of the Bankruptcy Code when such application would permit a debtor to achieve a unilateral termination or modification of a collective bargaining agreement without meeting the requirements of Sec. 1113.
 
 
 42
 (C)
 
 
 43
 We consider, on the instant appeal, a very specific question, i.e., whether Congress intended in enacting Sec. 1113(f) to preclude the application of the automatic stay provisions of Sec. 362 to any dispute concerning a collective bargaining agreement absent compliance with the provisions of Sec. 1113. We find no evidence that Congress had that specific intent.
 
 
 44
 Section 1113(f) is circumstance specific rather than section specific. Congress did not choose to direct Sec. 1113(f) at any specific provision whose application it deemed would always permit a debtor unilaterally to alter a collective bargaining agreement. Rather, Sec. 1113(f) presumes a particularized determination in any circumstance as to whether the application of another provision of the Bankruptcy Code will permit a debtor unilaterally to terminate or alter a collective bargaining agreement.
 
 
 45
 If Congress had intended to preclude application of the automatic stay to any dispute involving a collective bargaining agreement, it could have excepted explicitly proceedings to enforce a collective bargaining agreement from the automatic stay provisions. 11 U.S.C. Sec. 362(b) (1988). Indeed, in enacting the legislation that included Sec. 1113, Congress added two exceptions to the automatic stay. BAFJA, Pub.L. No. 98-353, 98 Stat. 333, 365, 371 (1984) (11 U.S.C. Sec. 362(b)(7), (10) (1988)). Moreover, other sections of the Bankruptcy Code explicitly state that Sec. 362 is inapplicable. E.g., 11 U.S.C. Sec. 1110(a) (1988) (right of secured creditor with purchase money security interest in aircraft or its parts not subject to Sec. 362); 11 U.S.C. Sec. 1168 (1988) (right of secured creditor with purchase money security interest in rolling stock equipment or accessories used on such equipment not subject to Sec. 362).
 
 
 46
 Since we discern no congressional intent on the specific issue before us, our analysis is governed by two rules of statutory construction. The first encourages consistent interpretations of statutes so as to give the fullest effect to congressional intent. United States v. Lopez-Cavasos, 915 F.2d 474, 479 (9 Cir.1990); Strobl v. New York Mercantile Exchange, 768 F.2d 22, 30 (2 Cir.), cert. denied, 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985). " '[W]hen two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective.' " Radzanower v. Touche Ross & Co., 426 U.S. 148, 155, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976) (citation omitted). The second instructs us that, when two statutes are in irreconcilable conflict, we must give effect to the most recently enacted statute since it is the most recent indication of congressional intent. Id. at 154, 96 S.Ct. at 1993.
 
 
 47
 We agree with the district court's conclusion that, to the extent the purpose of the automatic stay is to give the debtor a "breathing spell," it cannot be reconciled with Sec. 1113, which provides the sole method by which a debtor may obtain a "breathing spell" from its obligations under a collective bargaining agreement. In re Ionosphere Clubs, supra, 114 B.R. at 397. Were that the only purpose of the automatic stay, we would be inclined to affirm the district court's thorough opinion in its entirety.
 
 
 48
 The automatic stay, however, also allows the bankruptcy court to protect its jurisdiction over property of the debtor's estate by ruling on the appropriate manner and forum in which such disputes should be resolved. We previously have recognized the importance of that policy in reorganization proceedings. Bohack Corp. v. Borden, Inc., 599 F.2d 1160, 1165 (2 Cir.1979). In view of the importance of that policy, we conclude that a bright line rule precluding the application of the automatic stay to any situation involving a collective bargaining agreement was not intended by Congress. Rather, we believe that a case by case adjudication is preferable. We will give effect to the automatic stay to the extent that its application is not in irreconcilable conflict with Sec. 1113.
 
 
 49
 We hold, therefore, that Sec. 1113(f) precludes application of the automatic stay to disputes involving a collective bargaining agreement only when its application allows a debtor unilaterally to terminate or alter any provision of a collective bargaining agreement.
 
 IV.
 
 50
 We turn now to the application of the foregoing principles to the disputes at issue in the instant case. We consider the LPP decision first. Eastern contends that the district court erred in determining that Sec. 1113(f) precluded application of the automatic stay to the arbitration that ALPA sought to commence to determine whether the LPPs in the collective bargaining agreement had been triggered. We disagree.
 
 
 51
 Eastern contends that a stay of arbitration does not deprive a union of a forum in which to enforce the collective bargaining agreement. That argument ignores the fact that adjudication of this dispute in the bankruptcy court would nullify effectively the arbitration clause in the collective bargaining agreement and would substitute the court's judgment for that of the arbitrator.
 
 
 52
 The collective bargaining agreement expressly provides for arbitration as the method of dispute resolution. "[S]ection 1113 unequivocally prohibits the employer from unilaterally modifying any provision of the collective bargaining agreement." In re Unimet, supra, 842 F.2d at 884 (emphasis in original). This prohibition applies to arbitration clauses.
 
 
 53
 "It would be anomalous to find that Congress enacted a mandatory procedure for rejecting a collective bargaining agreement without which the agreement stays in full force and effect, and then to hold that a previously enacted section of the same statute--11 U.S.C. Sec. 362, providing for a stay of claims against a debtor's estate--automatically invalidates the arbitration clause of a collective bargaining agreement...."
 
 
 54
 In re Marine Pollution Serv., Inc., 88 B.R. 588, 595 (S.D.N.Y.), rev'd on other grounds, 857 F.2d 91 (2 Cir.1988).
 
 
 55
 Application of the automatic stay to ALPA's attempt to invoke that provision of the collective bargaining agreement would allow Eastern unilaterally to alter the collective bargaining agreement by avoiding its obligation to arbitrate. In re Bob's Supermarket's, Inc., 118 B.R. 783, 785-86 (Bankr.D.Mont.1990); In re Marine Pollution Serv., Inc., supra, 88 B.R. at 595 (dicta); see also Haggard, Labor Arbitration and Bankruptcy: A Trek into the Serbonian Bog, 17 Loy.U.Chi.L.J. 171, 187-88 (1986) ("Under section 1113 of the Bankruptcy Code, a collective bargaining agreement remains in full force and effect until its rejection is approved by the bankruptcy judge or other interim relief is allowed. Thus, the debtor in possession or trustee has the contractual duty to adhere to the substantive provisions of the agreement and the duty to arbitrate any alleged breaches of those provisions."). In this context, application of the automatic stay is in irreconcilable conflict with Sec. 1113(f), which requires that Eastern seek relief under the provisions of Sec. 1113 if it wishes to avoid its obligation to arbitrate labor disputes. Cf. In re Marine Pollution Serv., Inc., 89 B.R. 344, 346 (S.D.N.Y.1988) ("if the Trustee believes that the threat of slowdowns or other disturbance is such that he wishes to undo the arbitration award, he has open to him either a return to the arbitrator or a rejection of the contract in the manner Congress prescribed in 11 U.S.C. Sec. 1113"). We must give effect to Sec. 1113(f) as the later expression of congressional intent.
 
 
 56
 Our holding is consistent with the purpose underlying Sec. 1113 to the extent that it ensures that the collective bargaining process continue unless and until the bankruptcy court grants the debtor relief under Sec. 1113. The federal judiciary and Congress both have recognized the importance to the collective bargaining process of arbitration. E.g., United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 1351, 4 L.Ed.2d 1409 (1960) ("arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself"); 29 U.S.C. Sec. 173(d) (1988) (favoring method of labor dispute resolution agreed to by parties).
 
 
 57
 We hold that an arbitration brought pursuant to a provision in a collective bargaining agreement is not subject to the automatic stay since its application would allow a debtor unilaterally to avoid its obligation to arbitrate. The district court properly reversed the bankruptcy court's LPP decision.
 
 V.
 
 58
 This brings us to the wet-lease decision. Eastern contends that the district court erred in reversing the bankruptcy court's determination that the Florida action was subject to the automatic stay. We agree.
 
 
 59
 (A)
 
 
 60
 Unlike the LPP decision, application of the automatic stay to the action commenced by ALPA in the Southern District of Florida did not relieve Eastern of the obligation to participate in the method of dispute resolution provided for in the collective bargaining agreement. Adjudication in the bankruptcy court itself does not violate Sec. 1113(f). When a union seeks judicial enforcement of a collective bargaining agreement, the purposes behind Secs. 362 and 1113(f) both can be promoted if the dispute can be adjudicated in the bankruptcy court.
 
 
 61
 We agree with ALPA's contention that precluding it from enforcing the collective bargaining agreement would render Sec. 1113 illusory since a debtor would have no need to invoke it. If enforcement is foreclosed, then a union has no recourse against unilateral modifications imposed by a debtor.
 
 
 62
 The application of Sec. 362 to a non-bankruptcy judicial proceeding only forecloses enforcement of the collective bargaining agreement if it cannot be enforced in the bankruptcy court. Accordingly, if a union has a procedural mechanism to place the dispute before the bankruptcy court and the bankruptcy court has jurisdiction to resolve the dispute, enforcement of the collective bargaining agreement is not foreclosed and application of the automatic stay does not permit a debtor unilaterally to alter its collective bargaining agreement.
 
 
 63
 We are not persuaded by ALPA's fear that the automatic stay may be interpreted to stay all proceedings against the debtor, even those commenced in the bankruptcy court. E.g., In re Coastal Group, Inc., 100 B.R. 177, 178 (Bankr.D.Del.1989) (pre-petition breach of contract claim brought as adversary proceeding subject to automatic stay); In re Penney, 76 B.R. 160, 161 (Bankr.N.D.Cal.1987) (creditor cannot commence adversary proceeding against debtor in bankruptcy court for a cause of action that, if commenced in state court, would violate automatic stay); In re Lessig Constr., Inc., 67 B.R. 436, 443-44 (Bankr.E.D.Pa.1986) (automatic stay applies to bankruptcy proceedings). But see In re Vylene Enters., Inc., 63 B.R. 900, 905-07 (Bankr.C.D.Cal.1986) (automatic stay not applicable to proceedings seeking injunctive relief commenced in bankruptcy court); In re American Spinning Mills, Inc., 43 B.R. 365, 367 (Bankr.E.D.Pa.1984) ("stay implicitly does not bar a party from commencing an adversary or contested proceeding against the debtor under the caption of the bankruptcy case in the court where the petition is pending"). The only appropriate purpose that the stay promotes with respect to collective bargaining agreements is allowing the bankruptcy court to protect its jurisdiction so that it can proceed efficiently with reorganization. Therefore, Sec. 1113(f) compels the bankruptcy court to provide relief from the stay pursuant to Sec. 362(d) to hear the dispute itself, to the extent that is necessary, or, in the event that the bankruptcy court determines that it is not the appropriate forum for the resolution of such a dispute, to allow the resolution of the dispute to proceed in a non-bankruptcy forum.
 
 
 64
 Moreover, the fact that the bankruptcy court may not have jurisdiction to hear every conceivable claim that might arise from the collective bargaining agreement does not invalidate our analysis. The relevant inquiry is whether the bankruptcy court has jurisdiction to hear the particular dispute at issue. If the bankruptcy court does have jurisdiction to hear a dispute, it has the power to take the necessary steps to enforce its resolution. 11 U.S.C. Sec. 105 (1988).
 
 
 65
 Finally, our concern with a procedural mechanism by which the union can present the dispute to the bankruptcy court does not foreclose debtor-initiated resolutions of disputes. A situation in which the union could not bring the dispute before the bankruptcy court and the debtor chose not to, however, would render the collective bargaining agreement unenforceable. That result is prohibited by Sec. 1113(f).
 
 
 66
 (B)
 
 
 67
 It follows from our preceding analysis that, if the wet-lease dispute was properly presented to the bankruptcy court, or could have been, and the bankruptcy court could exercise jurisdiction over it, application of the automatic stay was not precluded by Sec. 1113(f). In making this determination, we need not decide whether the bankruptcy court would have jurisdiction to resolve any dispute arising from the collective bargaining agreement, but only whether it had jurisdiction to decide this particular dispute.
 
 
 68
 Initially, since Eastern brought the merits of the dispute before the bankruptcy court, we need not consider whether ALPA had a procedural mechanism with which to place the dispute before the bankruptcy court. We turn, therefore, to the jurisdiction issue.
 
 
 69
 In Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court considered constitutional restraints on bankruptcy court jurisdiction. The plurality distinguished those issues "at the core of the federal bankruptcy power ... from the adjudication of state-created private rights." Id. at 71, 102 S.Ct. at 2871. The bankruptcy court can exercise jurisdiction over the former, but cannot exercise jurisdiction over a state law contract claim that arose pre-petition. Such a claim can be adjudicated only in an Article III court.
 
 
 70
 In response to Marathon, as part of the BAFJA, Congress amended the jurisdictional grant to bankruptcy courts. Bankruptcy courts may enter "appropriate orders and judgments" in "core" proceedings. 28 U.S.C. Sec. 157(b)(1) (1988). Congress provided a non-exclusive list of proceedings it deemed to be core. 28 U.S.C. Sec. 157(b)(2) (1988). In addition, a bankruptcy court can hear non-core proceedings if they are related to the bankruptcy case and the bankruptcy court submits proposed findings of fact and conclusions of law for review by the district court. 28 U.S.C. Sec. 157(c)(1) (1988).
 
 
 71
 "[B]ankruptcy jurisdiction [is] to be construed as broadly as possible within the constitutional constraints of Marathon." In re Ben Cooper, Inc., 896 F.2d 1394, 1398 (2 Cir.1990), vacated on other grounds, --- U.S. ----, 111 S.Ct. 425, --- L.Ed.2d ---- 111 S.Ct. 425 (1990); see also In re Chateaugay Corp., supra, 109 B.R. at 621 ("[t]he reach of bankruptcy jurisdiction encompasses all matters the outcome of which would affect the debtor or its reorganization"). With the foregoing in mind, we consider whether the wet-lease dispute is a matter concerning the administration of the estate, justifying bankruptcy jurisdiction. 28 U.S.C. Sec. 157(b)(2)(A) (1988).
 
 
 72
 The instant dispute involves the effect of the collective bargaining agreement on a contract entered into post-petition. "Post-petition contracts with the debtor-in-possession ... are integral to the estate administration from the date they are entered into." In re Ben Cooper, supra, 896 F.2d at 1399. Although this dispute involves an alleged breach of the collective bargaining agreement, rather than an alleged breach of the post-petition contract, the ramifications of the dispute on the administration of the estate are of sufficient importance to justify bankruptcy court jurisdiction. E.g., Elsinore Shore Assocs. v. Local 54 Hotel Employees, 820 F.2d 62, 66 (3 Cir.1987) (determination of whether underlying cause of strike was arbitrable justifying Boys Market injunction against strike was matter concerning administration of the estate); International Ass'n of Machinists and Aerospace Workers v. Eastern Air Lines, Inc., 121 B.R. 428, 432-33--- B.R. ----, (S.D.N.Y.1990) (labor dispute involving union's conduct during strike was matter concerning the administration of the estate).
 
 
 73
 We are aware that Congress has expressed an intent that district courts, rather than bankruptcy courts, hear disputes that involve "consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. Sec. 157(d) (1988). Our holding is not inconsistent with congressional intent as expressed in that provision, which provides for mandatory withdrawal of such cases from the bankruptcy court to the district court. It has been construed narrowly. "Withdrawal under 28 U.S.C. Sec. 157(d) is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the Bankruptcy Court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." In re Ionosphere Clubs, Inc., 103 B.R. 416, 418-19 (S.D.N.Y.1989) (footnote omitted); see also In re White Motor Corp., 42 B.R. 693, 700 (N.D.Ohio 1984) (" '[t]he district court should ... not allow a party to use this provision to require withdrawal where such laws are not material to resolution of the proceeding' " (quoting legislative history)).
 
 
 74
 Eastern's rights in this dispute are governed by Florida East Coast, supra. In that case, the Court held that, during a strike, a carrier could make unilateral changes in a collective bargaining agreement without complying with the terms of the RLA that were reasonably necessary to its continued operation. Florida East Coast, supra, 384 U.S. at 246-48, 86 S.Ct. at 1424-26. Application of that doctrine does not require the bankruptcy court to engage itself in the intricacies of the RLA. Resolution of the dispute in the instant case, therefore, does not demand substantial consideration of the RLA, but, rather "involves the routine application of [a] non-Bankruptcy Code federal statute[ ]." In re Ionosphere Clubs, supra, 103 B.R. at 420.
 
 
 75
 We hold that the bankruptcy court had jurisdiction to resolve the issues presented by the Florida action.
 
 VI.
 
 76
 We turn next to the propriety of the bankruptcy court's exercise of its powers under Sec. 105 to enjoin ALPA from prosecuting the wet-lease action. Eastern contends that the district court erred in holding that the bankruptcy court was precluded by Sec. 1113(f) from issuing an injunction against prosecution of the Florida lawsuit. We agree.
 
 
 77
 Section 105(a) of the Bankruptcy Code provides that: "The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." This power "must and can only be exercised within the confines of the Bankruptcy Code." Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206, 108 S.Ct. 963, 968, 99 L.Ed.2d 169 (1988); see also In re Johns-Manville Corp., 801 F.2d 60, 63 (2 Cir.1986) ("Section 105(a) ... does not broaden the bankruptcy court's jurisdiction"). The bankruptcy court's equitable powers cannot be exercised in derogation of other sections of the Bankruptcy Code. In re Morristown & Erie R.R. Co., 885 F.2d 98, 100 (3 Cir.1989); In re NWFX, Inc., 864 F.2d 593, 595 (8 Cir.1989). The district court reasoned that an injunction issued to bar enforcement of a collective bargaining agreement outside the bankruptcy court would violate Sec. 1113. It followed, from the district court's analysis, that the bankruptcy court's equitable powers could not be used to that end. In re Ionosphere Clubs, supra, 114 B.R. at 404-05.
 
 
 78
 Since Sec. 105, like Sec. 362, is a means by which the bankruptcy court can protect its jurisdiction, In re Chateaugay Corp., supra, 109 B.R. at 621, we hold that its application is not always inconsistent with Sec. 1113. We hold that the bankruptcy court's exercise of its equitable powers pursuant to Sec. 105 to enjoin enforcement of a collective bargaining agreement is subject to the same considerations set forth above for the application of Sec. 362.VII.
 
 
 79
 ALPA contends that the Norris-LaGuardia Act prohibited the bankruptcy court from enjoining the Florida action and raises several issues concerning the merits of the wet-lease decision. The district court did not reach these issues since it decided that application of the automatic stay violated Sec. 1113(f). In light of our contrary holding, we remand the case to the district court for consideration of ALPA's claims.
 
 VIII.
 To summarize:
 
 80
 We hold that application of the automatic stay provisions of Sec. 362 of the Bankruptcy Code is precluded by Sec. 1113(f) only to the extent that they permit a debtor unilaterally to terminate or alter a collective bargaining agreement. With respect to the LPP decision, we hold that application of the automatic stay to the arbitration brought pursuant to the collective bargaining agreement violated Sec. 1113(f) since it allowed Eastern unilaterally to avoid its obligation to arbitrate. We hold that the bankruptcy court may stay a non-bankruptcy judicial proceeding to enforce a collective bargaining agreement if the union can bring the dispute before the bankruptcy court and the bankruptcy court has jurisdiction to resolve it. With respect to the wet-lease decision, we hold that the bankruptcy court had jurisdiction to resolve the issues raised by the Florida action and, therefore, the stay of that action was not precluded by Sec. 1113(f). Finally, we hold that section 1113(f) did not prohibit the bankruptcy court from issuing an injunction against prosecution of the Florida action. We remand the case to the district court for further consideration of the wet-lease decision.
 
 
 81
 Affirmed in part, reversed in part and remanded.
 
 
 82
 MINER, Circuit Judge, concurring in part and dissenting in part:
 
 
 83
 I agree with my colleagues insofar as they conclude that application of the automatic stay provided by Sec. 362 of the Bankruptcy Code to the arbitration of the labor protective provisions of the collective bargaining agreement is violative of Sec. 1113(f) of the Code. I respectfully disagree with my colleagues insofar as they conclude that Sec. 1113(f) does not bar an automatic stay of the Florida action, the injunction issued by the Bankruptcy Court against further prosecution of that action, and the Bankruptcy Court's resolution of the wet-leasing dispute.
 
 
 84
 Section 1 of the Collective Bargaining Agreement between Eastern and ALPA provides:
 
 
 85
 that all present or future flying including flight training (except for initial factory-conducted training in newly purchased equipment), revenue flying, ferry flights, charters and wet-leases performed in or for the service of Eastern Air Lines, Inc., shall be performed by pilots whose names appear on the then-current Eastern Air Lines' System Seniority List.
 
 
 86
 In apparent violation of the foregoing provision, Eastern entered into wet-leasing agreements whereby it leased aircraft with crews from Continental while Eastern pilots were on strike. As a debtor in a Chapter 11 reorganization, however, Eastern may not "unilaterally ... alter any provisions of a collective bargaining agreement" prior to court approval in the manner specified by Sec. 1113 of the Code. 11 U.S.C. Sec. 1113(f).
 
 
 87
 Rather than first seeking the requisite court approval authorizing rejection of the collective bargaining agreement upon a showing that modifications in the agreement "are necessary to permit the reorganization of the debtor," 11 U.S.C. Sec. 1113(b)(1)(A), Eastern proceeded to lease aircraft and crews for its normal business operations. Eastern made no effort to negotiate with ALPA before making its arrangements with Continental. As a consequence, ALPA sought in the district court in Florida to compel expedited arbitration of its wet-leasing grievance, to procure the issuance of an injunction in aid of arbitration and to obtain other relief as well. Arbitration of the wet-leasing grievance is required by the labor agreement, which also requires arbitration of the labor protective provisions issue and of any other dispute that may arise out of the performance or non-performance of the agreement.
 
 
 88
 My colleagues "hold that application of the automatic stay to the arbitration brought pursuant to the collective bargaining agreement violated Sec. 1113(f) since it allowed Eastern unilaterally to avoid the obligation to arbitrate." In their opinion, this holding serves only to bar the application of the stay to the labor protective provisions arbitration proceeding. To the extent that Sec. 1113(f) is implicated, however, it seems to me that there is no difference between rejecting the automatic stay as a bar to that arbitration proceeding and rejecting it as a bar to an action to compel arbitration of the wet-leasing issue. See In re Marine Pollution Serv., Inc., 88 Bankr. 588 (S.D.N.Y.1988).
 
 
 89
 In holding the automatic stay of Sec. 362 applicable, and in enjoining further prosecution in the Florida District Court under the authority of Sec. 105, the Bankruptcy Court proceeded to resolve the wet-lease issue by determining that "[t]hese wet-leases were, and are, reasonably necessary to Eastern's efforts to rebuild its operations." In re Ionosphere Clubs, Inc., 105 Bankr. 773, 775 (S.D.N.Y.1989). The Bankruptcy Court also found that "[b]y proceeding to enjoin Eastern from continuing with those [wet-lease] operations, ALPA would disrupt Eastern's planned flight operations causing the estate to suffer irreparably by the substantial erosion of Eastern's operations." Id. While these determinations may be taken as a finding that elimination of the wet-leasing prohibition is a modification "necessary to permit the reorganization of the debtor," 11 U.S.C. Sec. 1113(b)(1)(A), there was no compliance with the statutory scheme for rejection of the collective bargaining agreement, and the Bankruptcy Court therefore was without jurisdiction to excuse violation of the wet-leasing prohibition clause. See generally Note, Nobody Likes Rejection Unless You're a Debtor in Chapter 11: Rejection of Collective Bargaining Agreements Under 11 U.S.C. Sec. 1113, 34 N.Y.L.Sch.L.Rev. 169, 171-74 (1989).
 
 
 90
 By obtaining its relief in the Bankruptcy Court in the context of an action to enforce an automatic stay, Eastern is able to avoid compliance with a carefully-drawn statute enacted by Congress to govern labor-management relations in a bankruptcy reorganization. As noted by my colleagues, the statute was designed to overcome the Supreme Court's decision in National Labor Relations Board v. Bildisco & Bildisco, 465 U.S. 513, 528-29, 104 S.Ct. 1188, 1197-98, 79 L.Ed.2d 482 (1984), which allowed a debtor unilaterally to terminate or alter a collective bargaining agreement prior to seeking bankruptcy court approval under Sec. 365(a) for rejection of an executory contract. The statute specifically forbids termination in the manner permitted by Bildisco and promotes the long-established national labor policy of encouraging collective bargaining. See In re Century Brass Prods., Inc., 795 F.2d 265, 266, 272 (2d Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 433, 93 L.Ed.2d 383 (1986).
 
 
 91
 Eastern simply cannot be relieved of its obligation to avoid wet-leasing unless it follows the step-by-step procedure established by Congress. Since it contends that the modification in employee benefits and protection it seeks is necessary to permit its reorganization, it first must make a proposal to ALPA. 11 U.S.C. Sec. 1113(b)(1)(A). Eastern must provide ALPA with information relevant to an evaluation of the proposal. Id. Sec. 1113(b)(1)(B). It must hold meetings with ALPA in a good faith effort to reach a mutually satisfactory modification. Id. Sec. 1113(b)(2). It may file an application for rejection only after the modification proposal has been made, discussed and rejected. Id. Sec. 1113(d)(1). The court then will decide, after a hearing on notice to interested parties, whether to reject the agreement. Id.
 
 
 92
 Eastern cannot prevail, even after a hearing, unless the court finds that a proposal of the sort contemplated by the statute was made prior to the hearing, ALPA has refused without good cause to accept the proposal and "the balance of the equities clearly favors rejection of [the collective bargaining] agreement." Id. Sec. 1113(c). In making its decision, "the court must consider whether rejection would increase the likelihood of successful reorganization." Truck Drivers Local 807 v. Carey Transp., Inc., 816 F.2d 82, 89 (2d Cir.1987); see also In re Royal Composing Room, Inc., 62 Bankr. 403 (S.D.N.Y.), aff'd, 848 F.2d 345 (2d Cir.1988); cert. denied, 489 U.S. 1078, 109 S.Ct. 1529 103 L.Ed.2d 834 (1989). It is only after all the preliminary steps have been completed, and the court fails to rule on the application within thirty days after the hearing is commenced, that the debtor unilaterally "may terminate or alter any provisions of the collective bargaining agreement pending the ruling of the court on such application." 11 U.S.C. Sec. 1113(d)(2). Eastern took this one-sided action without bothering with the preliminaries. See In re American Provision Co., 44 Bankr. 907, 909 (D.Minn.1984). We should not countenance this conduct, for it precludes resolution of the wet leasing dispute through the preferred process of collective bargaining.
 
 
 93
 I have no quarrel with the notion that the Bankruptcy Court has jurisdiction to perform the court functions described in Sec. 1113. That jurisdiction was not invoked here, however, and there was accordingly an evasion of congressional purpose. My colleagues say that if a collective bargaining agreement can somehow be enforced in a bankruptcy court, then the automatic stay provisions of Sec. 362 may be applied to enforcement of the agreement in a non-bankruptcy court; that the wet-leasing dispute properly was placed before the Bankruptcy Court here; and that the Bankruptcy Court's exercise of its equitable powers under Sec. 105 to enjoin enforcement of the collective bargaining agreement is a means that may be used for the protection of bankruptcy court jurisdiction. I say that application of the automatic stay provisions of Sec. 362 to an action brought to compel compliance with the arbitration provisions of a collective bargaining agreement is inconsistent with the broad purposes and specific language of Sec. 1113; that the wet-leasing dispute was not properly placed before the Bankruptcy Court here; and that the equitable powers of a bankruptcy court under Sec. 105 may not be used to enjoin enforcement of a collective bargaining agreement in any manner inconsistent with Sec. 1113. Accordingly, I would affirm the judgment of the district court in all respects.