**In re CABLEVISION S.A., Debtor in A Foreign Proceeding.**

**Bankruptcy No. 04–15697 (SMB).**
**No. 04 Civ. 7278(SWK).**

United States District Court,
S.D. New York.

Oct. 6, 2004.

Louis M. Solomon, Claude M. Millman, and Jennifer R. Scullion of Proskauer Rose LLP, for Debtor.

### *OPINION AND ORDER*

KRAM, District Judge.

SHL Company LLC ("SHL") moves to withdraw this matter from the Bankruptcy Court pursuant to 28 U.S.C. § 157(d). For the reasons set forth below, the motion is granted.

## FACTUAL BACKGROUND

Defendant Cablevision is a cable television company that provides cable and Internet services in Argentina. It is the largest multi-system operator in Argentina, based on the number of subscribers served. *See* Cablevision's Memorandum of Law In Opposition To Motion of SHL Company LLC For Withdrawal of The Reference, dated September 23, 2004 ("CV Opp."), at 3. However, Cablevision is apparently owned by two U.S. entities: a Texas buyout firm and a Colorado cable firm. *See* Transcript of Oral Argument before Honorable Shirley W. Kram, September 29, 2004 ("Tr.") at 5. Cablevision has also issued $800 million of debt in the United States. *Id.*

Plaintiff SHL is a U.S. investment group whose members include pension funds and charitable institutions representing approximately six million U.S. pensioners and retirees. SHL claims that it is among the largest of Cablevision's noteholders, holding approximately 35% of the Cablevision securities at issue. *See* Respondent SHL's Memorandum of Law in Support of Its Motion to Withdraw The Reference of This Matter From The Bankruptcy Court Pursuant to 28 U.S.C. § 157(d), dated September 13, 2004 ("SHL Memo"), at 5.

The dispute between these parties arises from notes issued by Defendant Cablevision in four series (Series 5, 9, 10 and 11) (the "Notes"). Plaintiff's Statement of Undisputed Facts Pursuant to Local Rule Civil Rule 56.1, dated August 27, 2004 ("56.1 St."), at 1. Plaintiff SHL purchased interests in each of the four series of Notes. *Id.* The Series 5 and Series 10 notes were registered with the SEC in 1999 and 2000, respectively. *Id.* at 2.

Cablevision ceased making interest and principal payments on its U.S. dollar-denominated debt, including the Notes, beginning in February 2002. CV Opp. at 4.

According to its own Memorandum for the Tender of Existing Notes, the outstanding principal amount on the Notes is $725 million. *See* Declaration of Jennifer R. Scullion, dated September 13, 2004 ("Scullion"), Exhibit 17, at 87.

The Notes are governed by an Indenture, dated August 11, 1998. Importantly, the Indenture contains the following statement:

> Notwithstanding any other provision in this Indenture or the Notes, any Noteholder shall have the absolute and unconditional right to receive payment, as provided herein . . . and to institute suit for the enforcement of any such payment, and such rights shall not be impaired without the consent of such Noteholder.

Declaration of William J. Connors, dated August 30, 2004, Exhibit B at ¶ 28.

The Notes are governed by substantive U.S. and New York law, including the mandatory provisions of the Trust Indenture Act, 15 U.S.C. § 77aaa, (the "TIA"). Scullion Exhibit 16. Among the governing TIA provisions is Section 316, which provides that "the right of any holder of any indenture security to receive payment of the principal and interest on such indenture security . . . shall not be impaired or affected without the consent of such holder." 15 U.S.C. § 77ppp(b).

In September 2003, Cablevision announced a proposal to cancel all of the Notes and exchange them for roughly 50% of their value under a recently enacted extrajudicial procedure of Argentine law known as an Acuerdo Preventivo Extrajudicial ("APE"). SHL Memo at 6. The primary objective of the APE is to enable Cablevision to restructure substantially all of its outstanding debt. CV Opp. at 5. According to Cablevision, an APE proceeding is similar to a prepackaged (or

pre-arranged) case under the Bankruptcy Code. CV Opp. at 1.

On September 2, 2003, Cablevision announced a tender offer for the Notes in a written solicitation distributed to U.S. Noteholders. 56.1 St. at 8. On May 14, 2004, Cablevision filed a petition with an Argentine court stating that Cablevision would not count SHL's vote for purposes of calculating the Principal Majority and would exclude SHL's notes from the calculation. 56.1 St. at 4.

## PROCEDURAL HISTORY

On May 25, 2004, SHL filed an action ("SHL Action") in federal district court for the District of New Jersey claiming that Cablevision's debt restructuring violated the tender offer rules under the Williams Act, 15 U.S.C. § 78n, and the TIA, 15 U.S.C. § 77aaa. SHL Memo at 1–2.

On August 3, 2004, the SHL Action, by stipulation of the parties, was transferred to the Southern District of New York. The case was assigned to this Court on August 19, 2004.

On August 27, 2004, SHL filed a motion for summary judgment and injunctive relief, seeking, *inter alia:* (1) a declaration that Cablevision may not restructure the Notes without the unanimous consent of SHL and all other Noteholders; (2) enjoining Cablevision from taking any further action in violation of the TIA; and (3) requiring Cablevision to halt its tender offer, issue new disclosures, and return all Notes previously tendered. Plaintiff SHL's Memorandum of Law in Support of Its Motion For Summary Judgment and Injunctive Relief, dated August 27, 2004 ("SHL SJ Memo"), at 4.

Believing that the SHL Action threatened to interfere with the APE proceeding, Cablevision, four days after being served with SHL's motion papers, initiated a Section 304 proceeding in the Bankruptcy Court for the Southern District of New York seeking to enjoin continuation of the SHL Action. CV Opp. at 9. On September 1, 2004, the Honorable Robert D. Drain of the Bankruptcy Court held a hearing on Cablevision's Section 304 Case.[1] At the close of the hearing, Judge Drain granted Cablevision's application and issued a TRO to stay the SHL Action in the District Court.[2] Additionally, the Bankruptcy Court entered a stipulation and order scheduling the Section 304 Preliminary Injunction Hearing for October 6, 2004. CV Opp. at 11.

On September 13, 2004, SHL filed its Motion to Withdraw the Reference pursuant to 28 U.S.C. § 157(d).

## DISCUSSION

Cases "arising under," "arising in," or "related to" a case under the Bankruptcy Code are referred to the Bankruptcy Court under 28 U.S.C. § 157(a) and the "Standing Order of Referral of Cases to Bankruptcy Judges," issued by the District Court for the Southern District of New York in 1984.

■ Section 157(d) however, provides two grounds for withdrawal; one mandatory, the other permissive. In pertinent part, Section 157(d) provides:

> The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the Unit-

---

1. Cablevision apparently provided SHL with two hours notice regarding its decision to seek Section 304 relief in the Bankruptcy Court. *See* Tr. at 3.

2. Of note, at the hearing, Judge Drain expressed the view that the TIA is overridden by the U.S. Bankruptcy Code. *See* Transcript of Hearing before Hon. Robert D. Drain, September 1, 2004, at 56.

ed States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d).

 Withdrawal is mandatory under 28 U.S.C. § 157(d) in "cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 995 (2d Cir.1990). Further, matters "must be withdrawn under § 157(d) if they require the bankruptcy court to substantially interpret federal statutes which affect interstate commerce." *City of New York v. Exxon Corp.*, 932 F.2d 1020, 1026 (2d Cir. 1991). The "substantial and material" standard is satisfied even where a non-bankruptcy federal statute only "arguably conflicts" with the Bankruptcy Code. *See Bear, Stearns Sec. Corp. v. Gredd*, No. 01–CV–4379 (NRB), 2001 WL 840187, at *2 (S.D.N.Y. July 25, 2001).

## Withdrawal is Mandatory

 Despite pleadings that venture from the legislative history of Section 304 of the Bankruptcy Code to some of the more arcane provisions of Argentine insolvency law, the issue before the Court is actually quite narrow: whether the circumstances for mandatory withdrawal under 28 U.S.C. § 157(d) are present. After a careful review of the parties' submissions

and this Circuit's precedent, it is obvious that they are.[3]

In support of its motion, SHL contends that no relief can be granted to Cablevision in the Section 304 proceeding because, among other reasons, Cablevision is violating the tender offer rules and the TIA and because Section 304 does not, and cannot, override SHL's federal rights, as established by non-bankruptcy statutes. SHL Memo at 14. In contrast, Cablevision argues that the issues in the Section 304 case can, and should, be resolved through the straightforward application of the relevant factors set forth in Section 304(c) and that no significant application of non-Bankruptcy Code federal statutes is necessary or required to decide its § 304 P.I. motion. CV Opp. at 16. Cablevision is wrong.

The very existence of a dispute as to whether the rights of SHL under the TIA and Williams Act supersede Section 304 or whether the Bankruptcy Code overrides the TIA, regardless of the ultimate resolution of such dispute, mandates withdrawal. In other words, to determine whether Cablevision or SHL is correct, a court would be required to substantially and materially consider non-Bankruptcy code federal statutes; namely, the TIA and the Williams Act, and the interaction of those statutes with the Bankruptcy Code. Such consideration, pursuant to *Ionosphere*, 922 F.2d 984, compels withdrawal.[4]

---

3. SHL argues in the alternative that permissive withdrawal of the reference is also appropriate. *See generally* SHL Memo 23–30; SHL Reply 13–15. Because withdrawal in this matter is plainly mandatory, it is not necessary to discuss the factors a court should consider in deciding whether withdrawal is permissive. Even if withdrawal were not mandatory, however, in light of the facts of this case, the Court would exercise its discretion under Section 157(d) to permissively withdraw the reference.

4. The case for mandatory withdrawal is further bolstered by the fact that it appears that no Article III court has ever resolved the apparent tension between Section 304 and the TIA. *See* CV Opp. at 15, citing *In re Adelphi Inst., Inc.*, 112 B.R. 534, 537 (S.D.N.Y.1990) ("Significant interpretation" exists "when complicated interpretative issues, often of first impression, have been raised under non-title 11 federal laws" or when the bankruptcy court must resolve "substantial and material conflicts between non-title 11 federal laws and the Bankruptcy Code").

The Court also rejects Cablevision's contention that mandatory withdrawal on these facts would be contrary to public policy because it would provide an "escape hatch" for the removal of all non-bankruptcy related claims to a district court and create "fertile opportunities for mischief by any party seeking to obtain a jurisdictional transfer." CV Opp. at 27. There is simply no evidence that SHL has engaged in any jurisdictional mischief in this case.

It may very well be that Section 304 and its deference to foreign insolvency proceedings overrides the TIA; it may also well be that extending comity to the APE is the appropriate course; but that is a determination for an Article III Court, not the bankruptcy court.[5]

SO ORDERED.

---

**5.** Cablevision's reliance on *Allstate Life Ins. Co. v. Linter Group, Ltd.*, 994 F.2d 996 (2d Cir.1993) is both premature and misplaced. It is premature because the only issue currently before this Court is whether withdrawal is mandatory under 157(d), not the circumstances in which comity is appropriate; it is misplaced (in fact, it appears to undermine Cablevision's opposition to withdrawal) because *Allstate's* eight-prong test for extending comity was applied by two Article III courts: Judge Patterson on the Southern District and the Court of Appeals for the Second Circuit.