## In re BUNTING BEARINGS, Debtor.

### No. 02–32578.

United States Bankruptcy Court,
N.D. Ohio.

June 6, 2003.

Kenneth C. Baker, Eastman & Smith, Ltd., John P. Gustafson, Toledo, OH, Peter C. Blain, Joshua A. Blakely, Milwaukee, WI, John P. Dillman, Houston, TX, Glen Dresser, N. Hollywood, CA, Patricia B. Fugee, Toledo, OH, David M. Fusco, Schwarzwald & McNair, Cleveland, OH, Niraj R. Ganatra, Detroit, MI, Barbara K. Hamilton, Malvern, PA, Peggy A. Housner, Lansing, MI, Bradley K. Johnston, Cincinnati, OH, Marc A. Melamed, Jessica E. Price, Cleveland, OH, Maury Poscover, Husch and Eppenberger LLC, St. Louis, MO, Peter N. Pross, Eckert, Seamans, Cherin and Mellott, LLC, Pittsburgh, PA, Mark H. Rose, Thomas J. Schank, Joan Torzewski, Toledo, OH, Kim D. Seaton, Cincinnati, OH, Basil A. Umari, Houston, TX, David A. Warfield, Husch and Eppenberger LLC, St. Louis, MO, for creditors.

John A. Gleason, H. Jeffrey Schwartz, Cleveland, OH, for creditor committee.

Amy L. Good, Cleveland, OH, U.S. Trustee.

H. Buswell Roberts, Toledo, OH, for debtor.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

The instant action is brought before the Court pursuant to the Motion of the Debtor–in–Possession to Void an Arbitration Award as a Violation of the Automatic Stay of 11 U.S.C. § 362(a). The United Auto Workers (hereinafter referred to as the "UAW") has filed an objection thereto, arguing that § 1113(f) of the Bankruptcy Code operates in this case so as to exclude the arbitration agreement from the scope of the automatic stay. On May 16, 2003, the Court held a hearing on this matter at which time the Parties were afforded the opportunity to make arguments in support of their respective positions. The Court has now had the opportunity to consider the arguments raised by the Parties, including those arguments submitted in the Post–Hearing Briefs allowed by the Court. After considering these arguments, in conjuncture with all of the evidence presented in this matter, the Court finds that the Motion of the Debtor–in–Possession should be Denied. Beginning with the relevant facts, the following sets forth the basis for this Decision.

The Debtor–in–Possession, Bunting Bearings Corporation (hereinafter referred to as the "DIP"), is in the business of manufacturing bronze castings and other finished parts. As a part of its business

operations, the DIP and the Objector, the UAW, have been parties to a series of collective bargaining agreements. As a part of these agreements, the DIP agreed to provide and maintain a pension plan for its employees. The collective bargaining agreement and the pension plan, which is incorporated by reference into the collective bargaining agreement, both provide that arbitration is to be used in the event of a dispute over the terms of the Pension Plan: (Ex. A). Pursuant to this provision, the UAW, on April 10, 2002, requested arbitration concerning the interpretation of a provision of the Pension Plan on behalf of one of the DIP's former employees. The issue presented by the UAW's request for arbitration potentially affects 85 other employees and former employees of the DIP. (Post–Hearing Brief, at pg. 2).

On April 22, 2002, the DIP filed a petition in this Court for relief under Chapter 11 of the United States Bankruptcy Code. Less than a month later, the arbitrator employed to hear the pension issue conducted a hearing on the matter, thereafter releasing his decision on July 1, 2002. In this decision, the arbitrator ruled against the DIP.

On March 21, 2003, the DIP filed the instant Motion seeking a declaration that the arbitrator's decision, having occurred while the automatic stay of § 362(a) was in effect, is void. As it relates to this matter, it is not disputed that both the arbitrator and the UAW received timely notice that the DIP had sought relief in this Court. (Doc. 333, Ex.# 1).

### DISCUSSION

The sole issue presented in this case, concerns whether the automatic stay operates so as to enjoin a party from enforcing their right, as set forth in a collective bargaining agreement, to arbitrate a dispute with a debtor-in-possession. As such

a determination concerns whether the automatic stay has been violated, this is a core proceedings over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. § 157(b)(2). *Davis v. Conrad Family Ltd. Partnership, (In re Davis),* 247 B.R. 690, 694 (Bankr.N.D.Ohio 1999).

██ The automatic stay of § 362(a) operates so as to enjoin most types of actions taken against the debtor to collect on a prepetition debt. *Id.* The purpose of the stay is twofold: (1) to give the debtor breathing space; and (2) to ensure the equal treatment of similarly situated creditors by preventing creditors, without the permission of the bankruptcy court, from pursuing claims against the debtor during the administration of the estate. *In re Siciliano,* 13 F.3d 748 (3rd Cir.1994). Given these dual purposes, which lay at the heart of bankruptcy jurisprudence, the stay is given a broad interpretation. *See, e.g., U.S.A. v. Ruff (In re Rush–Hampton Indust. Inc.),* 98 F.3d 614, 617 (11th Cir. 1996). Thus, as pointed out by the DIP, the scope of the automatic stay has been held to encompass postpetition proceedings conducted pursuant to an arbitration clause. *Savers Fed. Sav. & Loan Assoc. v. McCarthy Constr. Co. (In re Knightsbridge Devel. Co.),* 884 F.2d 145, 148 (4th Cir.1989) (postpetition entry of arbitration award violates the automatic stay); *see also FAA v. Gull Air, Inc.,* 890 F.2d 1255, 1262 (1st Cir.1989).

██ The automatic stay, however, is subject to certain exceptions. In this regard, it is the UAW's contention that § 1113(f) of the Bankruptcy Code operates so as to exclude from the reach of the automatic stay, any arbitration provision which is set forth in a collective bargaining agreement. (Doc. No. 351). The language of § 1113(f) provides:

No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

The DIP, however, argues that this section is not implicated since it is not actually seeking to alter or modify the collective bargaining agreement between the Parties, but is rather only seeking to impose the automatic stay upon the functioning of the arbitration agreement. (Doc. No. 400, at pg. 1). Stated differently, it is the DIP's position that a party's rights under an arbitration agreement will not, in violation of § 1113(f), be altered or modified by the automatic stay, but instead will only be postponed.

The seminal case interpreting § 1113(f) as it relates to an arbitration provision in a collective bargaining agreement is *In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2nd Cir.1990). In *In re Ionosphere Clubs*, the question addressed by the Court was framed as this: "This appeal raises the question of the effect of § 1113 of the Bankruptcy Code on the application of the automatic stay provisions of § 362 of the Bankruptcy Code to non-bankruptcy proceedings to enforce a collective bargaining agreement." *Id.* at 989. After conducting a thorough analysis of § 1113, the Court concluded that the automatic stay, when in conflict with § 1113(f), was subject to the protections provided by this Chapter 11 provision. *Id.* at 990–91.

■ From a statutory interpretation standpoint this holding is coherent, and thus will be followed. This coherency is derived from the fact that a fundamental canon of statutory interpretation holds that when there is an apparent conflict between a later, more specific statute— here § 1113(f)—and an earlier, more general statute,—here § 362—the later, more specific statute governs. *Id.* at 991; *United States v. Castro–Rocha*, 323 F.3d 846, 851–52 (10th Cir.2003). Additionally, it is observed that the *In re Ionosphere Clubs* holding generally conforms with the Sixth Circuit's decision in *In re Unimet Corp.*, where the Court held that § 1113(f) can trump general Bankruptcy Code provisions. Specifically, the Sixth Circuit ruled that § 1113(f) acted so as to modify the Bankruptcy Code's priority scheme by permitting retiree benefits due an under collective bargaining agreement to be accorded with essentially the status of an administrative expense even though it does not strictly meet the definition of such an expense under § 503. 842 F.2d 879 (6th Cir.1988), *cert. denied*, 488 U.S. 828, 109 S.Ct. 81, 102 L.Ed.2d 57 (1988).

■ However, in holding that the automatic stay was subject to § 1113(f), the Court in *In re Ionosphere Clubs* declined to adopt an absolute approach, whereby in every instance the terms of a collective bargaining agreement would be excluded from the scope of § 362(a). Instead, the Court *In re Ionosphere Clubs* adopted a case-by-case approach stating that:

a bright line rule precluding the application of the automatic stay to any situation involving a collective bargaining agreement was not intended by Congress. Rather we believe that a case by case adjudication is preferable.

We will give effect to the automatic stay to the extent that its application is not in irreconcilable conflict with § 1113.

We hold, therefore, that § 1113(f) precludes application of the automatic stay to dispute involving a collective bargaining agreement only when its application allows a debtor unilaterally to terminate or alter any provision of a collective bargaining agreement.

*Id.* at 992. In determining on a case-by-case basis whether the application of the automatic stay would allow a debtor to unilaterally terminate or alter a provision of a collective bargaining agreement, the focus of the Court in *In re Ionosphere* was on whether the dispute could be adjudicated in the bankruptcy court. *Id.* at 993. If it could be, then it was reasoned that no harm would be imposed upon the union and its members by enforcing the automatic stay. On the other hand, if the dispute involving the collective bargaining agreement could not be adjudicated in the bankruptcy court, then the application of the stay would render the protections of § 1113 "illusory," because with the automatic stay in effect, the utilization of any enforcement mechanism contained in the collective bargaining agreement would be foreclosed. *Id.* To ascertain whether a dispute could be adjudicated in bankruptcy court, the Court in *In re Ionosphere* stated, "if a union has a procedural mechanism to place the dispute before the bankruptcy court and the bankruptcy court has jurisdiction to resolve the dispute, enforcement of the collective bargaining agreement is not foreclosed and application of the automatic stay does not permit a debtor unilaterally to alter its collective bargaining agreement." *Id.* at 993.

■ Again, this Court agrees with the reasoning of the *In re Ionosphere* decision. This is due to the fact that fundamentally arbitration is based upon the notion of resolving disputes in a timely and efficient manner. As a consequence, a party who, on account of § 362(a), is denied their right to arbitrate for an extended period of time has clearly had, in violation of § 1113(f), their right to arbitrate altered, instead of merely postponed as the DIP argues. In this regard, it is noted that in a Chapter 11 case, it is not uncommon for the automatic stay to be in effect for an extended period of time given that it takes some debtors months, if not years to put forth a viable plan of reorganization.

■ As pointed out in *In re Ionosphere*, however, if a matter is capable of being adjudicated in bankruptcy court, then the application of the automatic stay to a collective bargaining agreement will not result in a unilateral modification of the agreement, and therefore will not invoke the protections of § 1113(f). By way of an illustration, in *In re Ionosphere* it was held that the rejection of a lease—which this Court's notes is a core proceeding and thus particularly suited for adjudication in bankruptcy court [1]—was subject to the automatic stay.[2] On the other hand, *In re Ionosphere*, a party's right to arbitrate under a collective bargaining agreement [3] was not subject to the automatic stay because such an action was incapable of being brought before the bankruptcy court. *Id.* at 992. Similarly, with a right to arbitrate under a collective bargaining agreement at issue in this case, there appears to be neither a procedural mechanism to bring the pension matter before

---

1. *See, L.T. Ruth Coal Co. v. Big Sandy Coal and Coke Co.*, 66 B.R. 753 (Bankr.E.D.Ky. 1986).

2. The lease agreement at issue in *In re Ionosphere* involved what is known in the industry as a "wet-leasing" agreement whereby one airline leases aircraft and crews to another airline. In *In re Ionosphere* the collective bargaining agreement prohibited this practice.

3. At issue here was whether arbitration, as allowed under the collective bargaining agreement, could be used to determine whether labor protective provisions in the collective bargaining agreement had been triggered by the debtor's merger with another company.

the bankruptcy court nor a basis to invoke the jurisdiction of the Court. A couple of observations support this supposition.

First, the Parties' arbitration agreement provides, in no uncertain terms, that both the UAW and the DIP are to select an arbitrator. (Ex. A, at pg. 57). Thus, in the absence of consent by both of the Parties (which given the UAW's stance in this case is clearly lacking), there exists no procedural mechanism to bring the Parties' arbitration matter before this Court. Secondly, any decision entered by the Court concerning the UAW's Pension Plan would, in all likelihood, have been issued against the Plan itself, which is a distinct entity, and not the DIP. As a result, the jurisdiction of this Court is tenuous, at best, given that any decision rendered, although certainly affecting the DIP at least indirectly, would not necessarily directly involve the administration of the DIP's estate. Accordingly, for these reasons, and in accordance with the Court's ruling in *In re Ionosphere*, it is the decision of this Court that any award made under the Parties' collective bargaining, being subject to the protections of § 1113(f), is not subject to the automatic stay of § 362(a).

Notwithstanding, the DIP asserts that even if § 1113(f) nullifies the application of the automatic stay for arbitrations awards made under the Parties' collective bargaining agreement, such a holding is not applicable in this case on account of the fact that at issue in this case is the UAW's Pension Plan which is a separate and distinct entity from the Parties' collective bargaining agreement. In support of this position, the DIP raised a number of specific points, including, but not limited to: (1) the UAW's request for arbitration was made under the Pension Plan, not the Collective Bargaining Agreement; (2) the calculation of benefits is exclusively detailed in the Pension Plan; (3) provisions of the Pension Plan were not negotiated by the UAW; and (4) the Pension Plan is administered by a separate entity.

However, while not necessarily disagreeing with the above statements, from a strictly contractual interpretation standpoint, the DIP's argument lacks merit. This is because the Pension Plan at issue in this case is, in unequivocal terms, incorporated into the UAW's Collective Bargaining Agreement. Specifically, the collective bargaining agreement states:

> Establishment of the Plan. The Company shall establish a con-contributory pension plan which shall be known as the "BUNTING BEARINGS CORP. DELTA—LOCA 877 UAW PENSION PLAN" (hereinafter referred to as the "Plan"), a copy of which is attached hereto as Exhibit A and *made a part of this Agreement.*

(Emphasis added) (Ex. A, at pg. 56). Thus, regardless of whether the pension plan and the collective bargaining agreement are distinct entities, there clearly existed an intent, manifested by the above language, to make any dispute with respect to the Pension Plan subject to the terms of the collective bargaining agreement.

Taking a different approach, the DIP also raised legal arguments in support of its position that the Parties' collective bargaining agreement and the UAW's Pension Plan are separate and distinct entities. First, in the words of the DIP, it is asserted that to include a pension plan within the ambit of a collective bargaining agreement, "would negate the entire body of Employee Retirement Income Security Act (ERISA) law, since including pension plans in the definition of collective bargaining agreements would require that the National Labor Relations and the LMRA exclusively govern their interpretation and

there would thus be no need for ERISA." (Doc. 355, at pg. 3). Put differently, it is the DIP's position that since separate (and in many instances incompatible) statutory schemes govern pension plans and collective bargaining agreements, the two cannot be interpreted together. This argument, however, overlooks one very important point: For purposes of § 1113, bankruptcy law, not ERISA or the LMRA, controls the issue of whether a pension plan qualifies as a collective bargaining agreement under § 1113(f). The DIP's second argument, however, takes this tenet into account, asserting that even though a pension plan may be incorporated by reference into a collective bargaining agreement, such a plan is not legally capable of being subject to the restrictions of § 1113, since this section is limited to "collective bargaining agreements."

■ The term "collective bargaining agreement," is neither defined in § 1113, nor is there any case law on point. After considering the matter, however, the Court could not surmise any reason why a pension plan, which is incorporated by reference into a collective bargaining agreement, should be excluded from the scope of § 1113. To the contrary, and as will now be explained, the context in which § 1113 was enacted, together with public policy considerations and the broad statutory language of the statute, demonstrate that § 1113(f) was meant to be read expansively.

First, § 1113 was enacted in direct response and was specifically meant to overturn the Supreme Court's decision in *Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), where it was held that a collective bargaining agreement was simply an executory contract, and thus subject to rejection under § 365. In *Bildisco* the collective bargaining agreement provided, among other things, that the debtor-in-possession contribute to an employee's pension plan. Given therefore this fact, together with the principle that Congress is presumed to know the attendant circumstances (such as existing case law) pertinent to any legislation it enacts,[4] it would then follow that since a pension plan was at issue in *Bildisco*, any exclusion of this type of contractual arrangement from the scope of § 1113 would have been specifically stated.

The expansive nature of § 1113(f) is also illustrated by the all-inclusive language of the statute which provides for its applicability whenever a debtor-in-possession seeks to "unilaterally terminate or alter *any provisions* of a collective bargaining agreement ..." (Emphasis supplied). Also of noteworthiness, Black's Law Dictionary defines a "collective bargaining agreement," as being composed of more than one agreement; namely, the "[t]he joint and several contracts of members of a union ... establishing, in a general way, the reciprocal rights and responsibilities of employer, employees and union" BLACK'S LAW DICTIONARY, 263 (6th Ed.1990). Finally, the expansive nature of § 1113(f) is supported by the Supreme Court's repeated reiteration that under Federal Labor Relations Law there exists a federal policy in favor of enforcing labor contracts. *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957) (holding that LMRA expresses a

---

4. *Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 185, 108 S.Ct. 1704, 1712, 100 L.Ed.2d 158 (1988) (Congress is presumed to know about existing law pertinent to the legislation it enacts); *United States v. Phillips*, 19 F.3d 1565, 1581 (11th Cir.1994) (Congress is presumed to be knowledgeable about existing case law pertinent to any legislation it enacts, and about the basic rules of statutory construction.).

federal policy in favor of the enforceability of labor contracts); *Charles Dowd Box Co. v. Courtney,* 368 U.S. 502, 509, 82 S.Ct. 519, 7 L.Ed.2d 483 (1962) (LMRA reflects congressional recognition of the vital importance of assuring the enforceability of collective bargaining agreements).

■■■ Therefore, given that all of the above considerations favor an expansive reading of § 1113(f), the Court will not limit the protections of this section to solely those terms which are specifically set forth in an agreement labeled by the parties as a collective bargaining agreement. Rather, if there exists a clear intent on the part of the parties to incorporate into a collective bargaining agreement other appurtenant agreements, those other agreements, subject to the limitation set forth in *In re Ionosphere,* will also be accorded with the protections provided for by § 1113. Accordingly, as there existed a clear intent, as discussed earlier, on the part of the Parties to include within the scope of their collective bargaining agreement the terms set forth in the UAW's Pension Plan, this Plan will be afforded the protections of § 1113(f).

To thus summarize, based upon the language of the agreements, the UAW's Pension Plan will be deemed to be incorporated into the Parties' collective bargaining agreement for purposes of § 1113(f). Additionally, the Court will follow the decision made by the Second Circuit Court of Appeals in *In re Ionosphere Clubs, Inc.,* 922 F.2d 984 (2nd Cir.1990). Consequently, since the automatic stay of § 362(a) would have effectively altered the UAW's right to arbitrate issues concerning its Pension Plan, the protections afforded to the DIP by § 362(a) must be subordinated to those protections afforded to the UAW under § 1113(f).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Motion of the Debtor–in–Possession, Bunting Bearings Corporation, to Void an Arbitration Award as a Violation of the Automatic Stay of 11 U.S.C. § 362(a), be, and is hereby, DENIED.