### In re FULTON BELLOWS & COMPONENTS, INC. f/k/a JRGACQ Corporation, Debtor.

No. 03–33186.

United States Bankruptcy Court, E.D. Tennessee.

Feb. 9, 2004.

Opinion Amending Decision March 11, 2004.

Whatley Drake, LLC, Glen M. Connor, Esq., Birmingham, AL, for United Steelworkers of America, AFL–CIO–CLC.

Greenbaum, Doll & McDonald, PLLC, Lawrence R. Ahern, III, Esq., David W. Houston, IV, Esq., Nashville, TN, for Debtor.

Richard F. Clippard, Esq., United States Trustee, Patricia C. Foster, Esq., Knoxville, TN, for United States Trustee.

### MEMORANDUM ON PROTECTIVE MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362

RICHARD S. STAIR, JR., Bankruptcy Judge.

This contested matter is before the court on the Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 (Motion for Relief), filed on January 9, 2004, by the United Steelworkers of America, AFL–CIO–CLC (the Union). By the Motion for Relief, the Union seeks authority to proceed with arbitration under the Collective Bargaining Agreement dated October 16, 1999, between the Debtor and the Union's Local 5431 (Agreement).[1] It is the Union's position that the

---

1. The court takes judicial notice of the Agreement entered into evidence as Trial Exhibit 12 at the trial on the Motion by the Debtor Seeking Rejection of Collective Bargaining Agree-

automatic stay provisions of 11 U.S.C.A. § 362(a) (West 1993 & Supp.2003) do not apply to the dispute resolution procedure set forth in the Agreement. However, because the Debtor has refused arbitration on the grounds that the automatic stay prohibits this procedure, the Union, rather than risk the imposition of sanctions associated with a violation of the automatic stay, filed the present Motion for Relief. It is the contention of the Union that the only procedure by which the Agreement may be modified is set forth in 11 U.S.C.A. § 1113(f) (West 1993), because the grievances concern the Debtor's purported unilateral alterations to the attendance policy and medical insurance governed by the Agreement. Should the court determine the automatic stay to apply, the Union argues that it is entitled to relief "for cause" under 11 U.S.C.A. § 362(d)(1) (West 1993 & Supp.2003).

The Debtor opposes the Motion for Relief, arguing that the arbitration is subject to the automatic stay and that when the Union filed its proof of claim on October 14, 2003, it yielded itself to the jurisdiction of the bankruptcy court to determine all pre-petition matters, including the grievances to be arbitrated.

The court held a preliminary hearing on the Motion for Relief on February 5, 2004, allowing the parties to present their respective arguments, and scheduling an evidentiary hearing on the Motion for March 2, 2004. The court advised the parties, however, that if it determined, after further review of their arguments and the related authority, that the Motion for Relief could be decided as a matter of law, the evidentiary hearing would not be held. Resolution of the Union's Motion for Relief

is a core proceeding under 28 U.S.C.A. § 157(b)(2)(G) (West 1993).

## I

The Debtor, located in Knoxville, manufactures bellows, devices used in jet engines and medical equipment to sense changes in temperature. The Debtor employs members of the Union, many for more than 25 years, to produce the bellows and to operate and maintain the equipment and machinery necessary for production. The Debtor's employment of Union members is governed by the Agreement, which addresses all aspects of the employer-employee relationship and expressly provides for the following dispute resolution procedures, in material part:

### ARTICLE 16

#### Grievance Procedure

16.01 Should any employee believe that he has been unjustly treated, he, with his representatives, must present his complaint within fourteen (14) days from the occurrence to the proper representatives of the Company, who will give the matter prompt and thorough consideration.... This does not apply to a shortage of wages.

16.02 Such complaint shall first be taken up with the Work Group Steward and Area Manager of the complaining employee. Failing satisfactory explanation or adjustment, the grievance shall be reduced to writing and presented to the Area Manager for his written reply. In the event the Area Manager's written reply is not satisfactory, appeal may then be taken by the employee and/or his representatives to the Operations

ments Pursuant to 11 U.S.C. § 1113 held on August 25 and 26, 2003, and all citations thereto arise from Trial Exhibit 12 to that proceeding. Certain factual findings set forth in this Memorandum are also taken from the record of the August 2003 hearing.

Manager, then to the Director of Human Resources or his designee.

. . . .

16.05 When a settlement is arrived at in any of the first two (2) steps which is satisfactory both to the proper representative of the Company and the Plant Chairman, such settlement shall be final and binding on all parties. When a settlement is arrived at in the third step which is satisfactory both to the Director of Human Resources of the Company and the International Representative of the Union, such settlement shall be final and binding on all parties.

. . . .

## ARTICLE 17

### Arbitration

17.01 Every effort shall be made by the Company and the Union to reach an amicable adjustment of all grievances. In the event such amicable adjustment cannot be reached by the procedures provided in this agreement, then the matter may be submitted for arbitration on the request of either party. Unless the matter is submitted for arbitration within fourteen (14) days after the decision of the Director of Human Resources, said decision shall be final and binding on both parties.

17.02 The Board of Arbitration shall consist of one (1) employee to be selected by the Company and one (1) employee selected by the Union. The Director of Human Resources and the International Representative of the Union will meet and attempt to select an arbitrator who is mutually acceptable and he will act as Chairman of the Board of Arbitration.

. . . .

17.04 The Board, when selected, shall meet within ten (10) days, but an extension of time, if required, may be agreed upon by both parties. At this meeting, both parties will present their case and the Board will render its findings within twenty (20) days after the hearing, but an extension of time, if required, may be agreed upon by both parties.

17.05 The decision of the majority of the Board of Arbitration shall be final and binding upon both parties. Neither the Board nor the neutral member shall have jurisdiction to arbitrate provisions of a new agreement, or to arbitrate away, in whole or in part, any provision of this agreement.

17.06 Satisfactory arrangements having been provided herein, whereby any and all disputes may be amicably settled by following the grievance procedure or by arbitration, it is agreed that there will be no strikes by the Union, and no lockouts by the Company, while this agreement is in effect.

The Agreement has an expiration date of October 2004, but it continues to be in effect until that time.

In recent years, the Debtor has faced financial challenges. In an attempt to alleviate some of these problems, the Debtor and the Union conducted negotiations to modify the Agreement in 2002 and early 2003. In February 2003, the Union voted upon and subsequently rejected the Debtor's proposed modifications. Nevertheless, in March 2003, the Debtor modified medical benefits provided for Union members under the Agreement by increasing co-pays, out-of-pocket costs, and deductibles, and by reducing coverage. Similarly, in April 2003, the Debtor changed the attendance policy and instituted other policy changes. The Union, believing that these actions were unilateral modifications of the Agreement, filed charges of unfair labor practices with the National Labor Relations Board, which determined that

the disputes were subject to the grievance and arbitration procedure outlined in the Agreement. Accordingly, after the grievances were not resolved, arbitration of these disputes was scheduled for June 2003. The arbitration did not proceed, however, because on June 10, 2003, the Debtor filed the Voluntary Petition commencing its Chapter 11 bankruptcy case. Thus, arbitration of these disputes has been pending since that time.

Since the filing of its Chapter 11 bankruptcy case, the Debtor has sought court-approved modification of the Agreement under 11 U.S.C.A. § 1113 (West 1993). On June 16, 2003, the Debtor sought interim modification of the Agreement under § 1113(e), and pursuant to an Order entered on July 2, 2003, the Agreement was modified such that the Debtor was not required to pay the Union members their full amount of vacation pay due under the Agreement. Thereafter, on August 6, 2003, the Debtor moved to reject the Agreement under § 1113(b) and (c), which was denied by Order entered August 29, 2003. Finally, on September 29, 2003, the Debtor again sought to reject the Agreement, which was also denied by Order entered October 29, 2003.[2]

## II

11 U.S.C.A § 1113 provides debtors with the only means by which they may modify and/or reject an existing collective bargaining agreement, requiring equitable proposals based upon relevant information and made in good faith, good faith negotiations, and good faith consideration by the union members. The purpose of this section is "to encourage collective bargaining and create[ ] an expedited form of collective bargaining with a number of

safeguards designated to insure that employers cannot use Chapter 11 solely to rid themselves of unions, but only propose modifications that are truly necessary for the company's survival." *In re Garofalo's Finer Foods, Inc.,* 117 B.R. 363, 370 (Bankr.N.D.Ill.1990). Section 1113 is also intended "to preclude debtors or trustees in bankruptcy from unilaterally terminating, altering, or modifying the terms of a collective bargaining agreement without following [the statute's] strict mandate." *Air Line Pilots Association v. Continental Airlines (In re Continental Airlines),* 125 F.3d 120, 137 (3d Cir.1997).

Along those lines and absent court approval,

(f) No provision of this title shall be construed to permit a [debtor-in-possession] to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

11 U.S.C.A. § 1113(f). The Union argues that this provision of the Bankruptcy Code renders the automatic stay provision of § 362(a) inapplicable to the pending arbitration of its grievances with the Debtor, and that it should, therefore, be allowed to proceed therewith.

The filing of a voluntary petition brings into operation a stay of, among other things, "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against that debtor that was or could have been commenced before the commencement of the case[.]" 11 U.S.C.A. § 362(a)(1). On its face, this section precludes the Union from proceeding with the arbitration of its grievances against the Debtor; however, when read in conjunction with § 1113(f),

2. The court's October 29, 2003 Order was appealed to the United States District Court pursuant to 28 U.S.C.A. § 158(a) (West Supp. 2003) and is currently pending before that court.

there is a conflict since the Agreement between these parties cannot be modified or altered unless pursuant to § 1113, and the Agreement provides that all disputes are to be arbitrated.

■ This conflict between § 362(a) and § 1113(f) was extensively addressed by the Second Circuit Court of Appeals in *Ionosphere Clubs, Inc. v. Air Line Pilots Assoc. (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984 (2d Cir.1990). First, the court examined the legislative intent and purpose of each statute. The court found that § 362 serves two primary purposes: (1) to give debtors a sort of "breathing spell" from creditors; and (2) to centralize disputes related to debtors' property before the bankruptcy court. *Ionosphere Clubs*, 922 F.2d at 989 (citations omitted). With regards to § 1113, the court deduced "from the language of the statute, statements made by the sponsors of the legislation, and the context in which it was enacted, that Congress intended that a collective bargaining agreement remain in effect and that the collective bargaining process continue after the filing of a bankruptcy petition unless and until the debtor complies with the provisions of § 1113." *Ionosphere Clubs*, 922 F.2d at 990. Based upon this examination, the court stated that

We construe subsection 1113(f) quite literally. We hold that it was meant to prohibit the application of any other provision of the Bankruptcy Code when such application would permit a debtor to achieve a unilateral termination or modification of a collective bargaining agreement without meeting the requirements of § 1113.

*Ionosphere Clubs*, 922 F.2d at 990–91.

Nevertheless, the court answered the question of "whether Congress intended in enacting § 1113(f) to preclude the application of the automatic stay provisions of

§ 362 to any dispute concerning a collective bargaining agreement absent compliance with the provisions of § 1113" in the negative. *Ionosphere Clubs*, 922 F.2d at 991. Instead, the court found that § 1113(f) must be interpreted as "circumstance specific rather than section specific" because Congress did not expressly except collective bargaining agreements from the automatic stay in § 362(b), nor did it specify in § 1113 that § 362 would be inapplicable. *Ionosphere Clubs*, 922 F.2d at 991. To resolve the conflict, the court looked to the following canons of statutory interpretation:

The first encourages consistent interpretations of statutes so as to give the fullest effect to congressional intent.... The second instructs us that, when two statutes are in irreconcilable conflict, we must give effect to the most recently enacted statute since it is the most recent indication of congressional intent.

*Ionosphere Clubs*, 922 F.2d at 991 (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976)). After further review, the court held that the bankruptcy court's protection of its jurisdiction over debtors' property and any disputes arising thereon is an important policy consideration, and accordingly, "a bright line rule precluding the application of the automatic stay to any situation involving a collective bargaining agreement was not intended by Congress." *Ionosphere Clubs*, 922 F.2d at 991. Instead, the court adopted the following rule:

We will give effect to the automatic stay to the extent that its application is not in irreconcilable conflict with § 1113.

We hold, therefore, that § 1113(f) precludes application of the automatic stay to disputes involving a collective bargaining agreement only when its application allows a debtor unilaterally to

terminate or alter any provision of a collective bargaining agreement.

*Ionosphere Clubs,* 922 F.2d at 991–92.

The court then examined this rule in accord with the actual collective bargaining agreement at issue in the case before it. The court affirmed the district court's holding that staying an arbitration under the collective bargaining agreement "ignores the fact that adjudication of this dispute in the bankruptcy court would nullify effectively the arbitration clause in the collective bargaining agreement and would substitute the court's judgment for that of the arbitrator." *Ionosphere Clubs,* 922 F.2d at 992. Additionally, "[a]pplication of the automatic stay to [the union's] attempt to invoke [the arbitration] provision of the collective bargaining agreement would allow [the debtor] to unilaterally alter the . . . agreement by avoiding its obligation to arbitrate." *Ionosphere Clubs,* 922 F.2d at 992. "In this context, application of the automatic stay is in irreconcilable conflict with § 1113(f), which requires that [the debtor] seek relief under the provisions of § 1113 if it wishes to avoid its obligation to arbitrate labor disputes." *Ionosphere Clubs,* 922 F.2d at 992.

Ultimately, the court held that "an arbitration brought pursuant to a provision in a collective bargaining agreement is not subject to the automatic stay since its application would allow a debtor unilaterally to avoid its obligations to arbitrate." *Ionosphere Clubs,* 922 F.2d at 993. Whether an agreement will be unilaterally modified requires a case-by-case analysis. *Ionosphere Clubs,* 922 F.2d at 991.

The application of § 362 to a non-bankruptcy judicial proceeding only forecloses enforcement of the collective bargaining agreement if it cannot be enforced in the bankruptcy court. Accordingly, if a union has a procedural mechanism to place the dispute before the bankruptcy court and the bankruptcy court has jurisdiction to resolve the dispute, enforcement of the collective bargaining agreement is not foreclosed and application of the automatic stay does not permit a debtor unilaterally to alter its collective bargaining agreement.

*Ionosphere Clubs,* 922 F.2d at 993. In determining whether a mechanism exists to bring the matter before the bankruptcy court, the court "need not decide whether [it] would have jurisdiction to resolve any dispute arising from the collective bargaining agreement, but only whether it had jurisdiction to decide this particular dispute." *Ionosphere Clubs,* 922 F.2d at 994.

The *Ionosphere* reasoning and rule has recently been adopted by a bankruptcy court within the Sixth Circuit. In *In re Bunting Bearings,* 302 B.R. 210 (Bankr. N.D.Ohio 2003), the court was faced with the issue of "whether the automatic stay operates so as to enjoin a party from enforcing their right, as set forth in a collective bargaining agreement, to arbitrate a dispute with a debtor-in-possession." *Bunting Bearings,* 302 B.R. at 213.

The court found the *Ionosphere* holding to be "coherent" because it was based upon the canons of statutory interpretation that "when there is an apparent conflict between a later, more specific statute— here § 1113(f)—and an earlier, more general statute—here § 362—the later, more specific statute governs." *Bunting Bearings,* 302 B.R. at 214. Additionally, the court noted that *Ionosphere* fell in line with the Sixth Circuit Court of Appeals' decision in *United Steelworkers of Am. v. Unimet Corp. (In re Unimet Corp.),* 842 F.2d 879 (6th Cir.1988), which addressed § 1113(f) in relation to the Bankruptcy Code's priority scheme and stood for the proposition that " § 1113(f) can trump gen-

eral Bankruptcy Code provisions." *Bunting Bearings,* 302 B.R. at 214.

Relying heavily upon the language of *Ionosphere,* that court held that

> this Court agrees with the reasoning of the *In re Ionosphere* decision. This is due to the fact that fundamentally arbitration is based upon the notion of resolving disputes in a timely and efficient manner. As a consequence, a party who, on account of § 362(a), is denied their right to arbitrate for an extended period of time has clearly had, in violation of § 1113(f), their right to arbitrate altered, instead of merely postponed as the DIP argues. In this regard, it is noted that in a Chapter 11 case, it is not uncommon for the automatic stay to be in effect for an extended period of time given that it takes some debtors months, if not years to put forth a viable plan of reorganization.

*Bunting Bearings,* 302 B.R. at 215. Finally, the court stated that "with a right to arbitrate under a collective bargaining agreement at issue in this case, there appears to be neither a procedural mechanism to bring the pension matter before the bankruptcy court nor a basis to invoke the jurisdiction of the Court." *Bunting Bearings,* 302 B.R. at 215–16.

The same applies to this case. The two grievances that the Union wishes to arbitrate concern modifications made to the health insurance benefits offered its members and the Debtor's modifications to the attendance policy.

■ The Debtor argues that because the Union filed a proof of claim, it has subjected itself to the bankruptcy court's jurisdiction over all matters concerning that claim. Additionally, the Debtor argues that arbitration is the Union's attempt to disguise its liquidation of its claim against the Debtor. The Debtor is correct in its assertion that by filing a proof of

claim, the Union has yielded all claims resolution issues to decision by the bankruptcy court. *See Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 109 S.Ct. 2782, 2799, 106 L.Ed.2d 26 (1989). However, the Union argues, and the court agrees, that the issues of the Debtor's attendance policy and health insurance benefits do not give rise to the claims resolution process. These disputes do not concern any type of monetary award, which could then be parlayed into the Union's claim. Instead, both disputes involve working conditions of the Union members and whether the Debtor unilaterally altered agreed upon terms of the Agreement.

The Agreement sets forth the sole method of resolving disputes concerning the issues between the Debtor and the Union members it employs. The first step, filing a grievance with the Debtor, was met prepetition. The second and only other step provided for in the Agreement is arbitration. These disputes are not of the type to implicate the claims resolution process. Moreover, the arbitration provisions of the Agreement expressly provide that a hearing shall be held within ten days from the selection of the Board of Arbitrators, who will then render a final and binding decision within twenty days unless both parties consent to an extension of time. Here, the Union has been held in abeyance by the Debtor for more than eight months.

For these reasons, the court finds that the automatic stay sufficiently interferes with operation of the Agreement, which may not be altered absent rejection or amendment pursuant to § 1113. This has not occurred, and thus, the Debtor's attempt to forego arbitration of its disputes with the Union is, in actuality, the unilateral modification of the Agreement and, as such, is expressly prohibited by § 1113(f). The automatic stay does not prohibit the

arbitration sought by the Union, and the Motion for Relief shall be denied as unnecessary.[3] The March 2, 2004 hearing on the Motion for Relief will be stricken.

An order consistent with this Memorandum will be entered.

### ORDER

For the reasons set forth in the Memorandum on Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362, the court, having determined that the automatic stay does not prohibit the arbitration sought by the United Steelworkers of America, AFL–CIO–CLC, by the filing of the Protective Motion for Relief From Automatic Stay of 11 U.S.C. § 362 on January 9, 2004, and that the requested relief is therefore unnecessary, directs the following:

1. The Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 is DENIED.

2. The March 2, 2004 hearing scheduled on the Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 is STRICKEN.

SO ORDERED.

### MEMORANDUM ON DEBTOR'S MOTION TO AMEND ORDER ON "PROTECTIVE MOTION FOR RELIEF FROM AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362" FILED BY THE UNITED STEELWORKERS OF AMERICA, AFL–CIO–CLC

Before the court is the Debtor's Motion to Amend Order on "Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362" Filed by the United Steelworkers of America, AFL–CIO–CLC (Motion to Amend) filed by the Debtor on February 19, 2004. The Debtor requests modification of the court's February 9, 2004 Order denying the Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 filed January 9, 2004, by the United Steelworkers of America, AFL–CIO–CLC (Union). In the Memorandum on Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 accompanying the February 9, 2004 Order, the court found that the automatic stay sufficiently interfered with the operation of the Collective Bargaining Agreement between the Debtor and the Union, in violation of 11 U.S.C.A. § 1113 (West 1993), and therefore held that the arbitration of disputes concerning unilateral changes by the Debtor to the Union's attendance policy and medical insurance were not prohibited by the automatic stay. The Debtor now asks the court for an amended order, clarifying that any remedial award resulting from the arbitration of these disputes must be dealt with by the bankruptcy court in the claims resolution process.

The Union filed the USWA's Response to Debtor's Motion to Amend Judgment on March 4, 2004, arguing that the Motion to Amend should be denied because the court correctly analyzed the facts and correctly applied the law. The Union also argues that arbitration awards are not self-enforcing, do not carry the force of law, do not provide a means of execution or enforcement, and do not address matters such as priority or allowance of claims. However, the Union does concede that "[w]hile the Union will certainly argue that a remedy contained in an arbitrator's award would reflect the appropriate remedy, whether injunctive or monetary, it would ultimately be for the [Bankruptcy] Court to deter-

---

3. Because the automatic stay does not affect continuation of the arbitration, it is not necessary for the court to address the Union's request for relief under § 362(d)(1).

mine the priority of the claim and the allowance (or not) of the claim."

The court finds the Debtor's Motion to Amend to be well taken for the following reasons. The unilateral modification of medical benefits and the company's attendance policy, the actions that are the subject of the arbitration, occurred prepetition in March and April 2003. The court recognizes that while the resolution of these disputes does not fall within the definition of a core proceeding under 28 U.S.C.A. § 157(b) (West 1993), a claim arising from prepetition conduct is subject to the core jurisdiction of the bankruptcy court if it is parlayed into or involves an equitable and/or monetary award. Although these issues, in and of themselves, do not give rise to the claims resolution process, in the event that an arbitrator determines that the Debtor violated the terms of this Collective Bargaining Agreement with the Union and that a monetary award against the Debtor and in favor of the Union is appropriate, the nature of the action changes. At that point and under that scenario, the award of any monetary sum, if permissible under the Collective Bargaining Agreement, would serve to liquidate the Union's claim and, as such, would, it appears to the court, be prohibited by the automatic stay of 11 U.S.C.A. § 362(a)(6) (West 1993 & Supp.2004).[1] The court nonetheless finds it appropriate that the arbitration be allowed to proceed to its conclusion. Any monetary award would not be subject to enforcement by the Union, but would necessitate the amendment of its proof of claim, thus bringing into play the Bankruptcy Code's claims resolution process.

In accordance with the above, the court holds that in the event that arbitration of these prepetition disputes should allow the fixing of a monetary award against the Debtor, the automatic stay will be modified to allow the arbitrator to determine the amount of such award, but no further.

An order consistent with this Memorandum will be entered. Additionally, the February 9, 2004 Order will be vacated and an order consistent with this Memorandum and with the Memorandum on Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 filed February 9, 2004, will be entered.

### ORDER

For the reasons set forth in the Memorandum on Debtor's Motion to Amend Order on "Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362" Filed by the United Steelworkers of America, AFL–CIO–CLC filed this date, the court directs the following:

1. The Debtor's Motion to Amend Order on "Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362" Filed by the United Steelworkers of America, AFL–CIO–CLC filed by the Debtor on February 19, 2004, is GRANTED.

2. The February 9, 2004 Order denying the Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 filed by the United Steelworkers of America, AFL–CIO–CLC on January 9, 2004, is VACATED. A superseding order will be entered.

SO ORDERED.

1. "[A] petition filed under section 301 ... operates as a stay, applicable to all entities, of—

.... 

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case[.]
11 U.S.C.A. § 362(a)(6).

## *ORDER*

For the reasons set forth in the Memorandum on Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 filed on February 9, 2004, and in the Memorandum on Debtor's Motion to Amend Order on "Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362" Filed by the United Steelworkers of America, AFL–CIO–CLC filed this date, the court, having determined that the automatic stay does not prohibit the arbitration sought by the United Steelworkers of America, AFL–CIO–CLC by the filing of the Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 on January 9, 2004, directs the following:

1. The Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 is DENIED.

2. In the event arbitration of the disputes raised by the United Steelworkers of America, AFL–CIO–CLC in the Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362, filed on January 9, 2004, results in a finding adverse to the Debtor under the terms of which it will be appropriate for the arbitrator to award payment of a monetary sum by the Debtor, the automatic stay of 11 U.S.C.A. § 362(a)(6) (West 1993 & Supp.2004) is MODIFIED to allow the fixing of such an award by the arbitrator, but no further.

3. This Order supersedes the February 9, 2004 Order entered with the supporting Memorandum on Protective Motion for Relief From Automatic Stay Pursuant to 11 U.S.C. § 362 filed the same date.

SO ORDERED.