**In re CHESTNUT HILL REHAB HOSPITAL, LLC, Chestnut Hill Rehab Center, LLC., Carrington Place of Chestnut Hill, LLC, Debtors.**

**Nos. 08–2150, 08–2151, 08–2152.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

March 25, 2008.

---

**2.** *See* http://www.usdo j.gov/ust/eo/bapc-pa/20070201/bci—data/median—income—ta-ble.htm

Buddy D. Ford, Tampa, FL, for Debtors.

**ORDER ON MOTIONS FOR ORDER TO SHOW CAUSE (NATIONAL UNION OF HOSPITAL AND HEALTH CARE EMPLOYEES, DISTRICT 1199C, AND AMERICAN ARBITRATION ASSOCIATION)**

PAUL M. GLENN, Chief Judge.

**THIS CASE** came before the Court for hearing on March 17, 2008, to consider two separate Motions for Order to Show Cause filed by the Debtors, Chestnut Hill Rehab Hospital, LLC, Chestnut Hill Rehab Center, LLC, and Carrington Place of Chestnut Hill, LLC. (Docs. 28, 32).

The Motions are directed to the National Union of Hospital and Health Care Employees, District 1199C (NUHHCE), and the American Arbitration Association (AAA). A separate agreed Order will be

entered with respect to the National Labor Relations Board.

In the Motions, the Debtors contend that NUHHCE and AAA have violated the automatic stay imposed under § 362 of the Bankruptcy Code by pursuing certain arbitration proceedings after the filing of the bankruptcy petitions.

In response, the NUHHCE and AAA assert that the automatic stay does not apply to arbitration proceedings that are commenced and pursued in accordance with a collective bargaining agreement entered by a Chapter 11 debtor and the union representing its employees.

## Background

The Debtors are engaged in the health care business. Chestnut Hill Rehab Hospital, LLC operates an inpatient rehabilitation hospital and an outpatient therapy facility, and has approximately 112 employees. Chestnut Hill Rehab Center, LLC operates a skilled nursing facility, and has approximately 46 employees. Carrington Place of Chestnut Hill, LLC operates an independent/assisted living and adult day care facility, and has approximately 44 employees. All of the facilities are located in Wyndmoor, Pennsylvania.

The Debtors filed petitions under chapter 11 of the Bankruptcy Code on February 20, 2008. The cases are being jointly administered.

It appears that the Debtors and the NUHHCE had entered into a collective bargaining agreement prior to the filing of the bankruptcy petition.

In the Motions for Order to Show Cause that are presently under consideration, the Debtors contend that the NUHHCE and the AAA have violated § 362 of the Bankruptcy Code by refusing to stay certain arbitration proceedings that had been initiated pursuant to the collective bargaining agreement. According to the Debtor, six to eight arbitration proceedings were pending at the time of the hearing on the Motions.

## Discussion

The issue in this case is whether the arbitration proceedings that had been commenced pursuant to the collective bargaining agreement between the Debtors and the NUHHCE were stayed upon the filing of the Debtors' bankruptcy petitions by virtue of § 362 of the Bankruptcy Code.

### A. The statutes

The resolution of this issue involves the interaction of two separate provisions of the Bankruptcy Code.

█ First, § 362(a) provides in part:

**11 USC § 362. Automatic stay**

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, ... operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

11 U.S.C. § 362(a). It is fundamental that the stay "afforded to debtors under the bankruptcy laws is a basic protection and its scope is intended to be broad." *In re Keen*, 301 B.R. 749, 753 (Bankr.S.D. Fla. 2003).

Second, § 1113(f) of the Bankruptcy Code provides:

## 11 USC § 1113. Rejection of collective bargaining agreements

(f) No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

11 U.S.C. § 1113(f) In this section, the term trustee includes a debtor in possession. 11 U.S.C. § 1113(b). Generally, subsection (b) of § 1113 requires a debtor to submit a proposal to the Union for modification of a collective bargaining agreement prior to rejecting the agreement under § 1113(a).

▄▄▄ Section 1113 "provides debtors with the only means by which they may modify and/or reject an existing collective bargaining agreement, requiring equitable proposals based upon relevant information and made in good faith, good faith negotiations, and good faith consideration by the union members. The purpose of this section is 'to encourage collective bargaining and create[ ] an expedited form of collective bargaining with a number of safeguards designated to ensure that employers cannot use Chapter 11 solely to rid themselves of unions, but only propose modifications that are truly necessary for the company's survival.'" *In re Fulton Bellows & Components, Inc.*, 307 B.R. 896, 900 (Bankr.E.D.Tenn.2004)(quoting *In re Garofalo's Finer Foods, Inc.*, 117 B.R. 363, 370 (Bankr.N.D.Ill.1990)).

### B. Case authority

"The seminal case interpreting § 1113(f) as it relates to an arbitration provision in a collective bargaining agreement is *In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir.1990)." *In re Bunting Bearings*, 302 B.R. 210, 214 (Bankr.N.D.Ohio 2003).

In *Ionosphere*, the issue was "whether Congress intended in enacting § 1113(f) to preclude the application of the automatic stay provisions of § 362 to any dispute concerning a collective bargaining agreement absent compliance with the provisions of § 1113." *In re Ionosphere*, 922 F.2d at 991.

In answering this question, the Second Circuit Court of Appeals found that no "bright line rule" existed to determine whether the stay applied in a particular circumstance. Instead, the Second Circuit determined that the test was whether the application of the stay would allow the debtor to unilaterally modify its collective bargaining agreement with the union in violation of § 1113(f). *Id.* at 991–92.

The Second Circuit then applied this test specifically to an arbitration clause found in the collective bargaining agreement before it. In applying the test to the arbitration clause, the Court "recognized the importance to the collective bargaining process of arbitration." *Id.* at 992.

The Court ultimately concluded that "an arbitration brought pursuant to a provision in a collective bargaining agreement is not subject to the automatic stay since its application would allow a debtor unilaterally to avoid its obligation to arbitrate." *Id.* at 993. In other words, the automatic stay does not apply to arbitration proceedings that are commenced pursuant to a collective bargaining agreement, because such a stay would operate as an impermissible modification of the arbitration clause contained in the agreement.

Approximately two and one-half years after the Second Circuit's opinion in *Ionosphere*, the District Court in New York interpreted the decision as follows:

The Court considered the application of the automatic stay provision of 11 U.S.C. § 362 to two different provisions of the collective bargaining agreement: 1) a prohibition on wet-leasing—the

leasing of aircraft and crews from another airline, and 2) a provision for arbitration to determine whether labor protective provisions in the collective bargaining agreement had been triggered, in this case by Eastern's merger with Continental. *The Court held that § 1113(f) overcomes the automatic stay as to the arbitration clause, but not as to the wet-lease clause-i.e. that arbitration must proceed unless and until the contract is rejected in accordance with § 1113.* but that proceedings to enforce a clause that barred wet-leasing were automatically stayed by the filing of the bankruptcy petition.

*In re Ionosphere Clubs, Inc.,* 154 B.R. 623, 627 (S.D.N.Y.1993)(Emphasis supplied). According to the District Court, the Second Circuit had distinguished the two provisions because the wet-leasing issue could be adjudicated by the Bankruptcy Court, which would not only enforce the parties' collectively bargained rights, but also promote the purpose of the automatic stay. *In re Ionosphere,* 154 B.R. at 628. As to the arbitration provision, however, the Second Circuit had found that adjudication of the underlying dispute in the bankruptcy court "would nullify effectively the arbitration clause in the collective bargaining agreement and would substitute the court's judgment for that for the arbitrator," all in derogation of the parties' collectively bargained rights. *In re Ionosphere,* 922 F.2d at 992.

Subsequently, in *In re Leslie Fay Companies, Inc.,* 168 B.R. 294 (Bankr.S.D.N.Y. 1994), the Bankruptcy Court further discussed the Second Circuit's treatment of the two different provisions contained in the collective bargaining agreement:

The [Second] Circuit held that sections 362 and 1113 are in conflict to the extent that the automatic stay would otherwise prevent the commencement of arbitration proceedings provided for by the collective bargaining agreement. On the other hand, for a dispute between the parties which was not arbitrable, the Circuit said that the automatic stay was operative and that the dispute could be litigated in the bankruptcy court since that did not offend any provision of the collective bargaining agreement.

*In re Leslie Fay,* 168 B.R. at 302.

Generally, the decisions that have followed *Ionosphere* have confirmed that arbitration proceedings that are brought pursuant to a collective bargaining agreement are not stayed under § 362, because the debtor's agreement to arbitrate is a provision of the collective bargaining agreement that cannot be modified unless the debtor complies with § 1113.

The injunction allowed Continental to avoid its obligation to arbitrate the merger dispute under the LPPs. In *In re Ionosphere,* the Court specifically held that the application of the section 362 automatic stay provision to effectuate this result in the absence of the debtor's compliance with the requirements of section 1113 was impermissible, as "its application would allow a debtor unilaterally to avoid its obligation to arbitrate."

*In re Continental Airlines,* 125 F.3d 120, 137 (3d Cir.1997). See also *In re Bunting Bearings,* 302 B.R. at 215(A "party who, on account of § 362(a), is denied their right to arbitrate for an extended period of time has clearly had, in violation of § 1113(f) their right to arbitrate altered, instead of merely postponed as the DIP argues."), and *In re Fulton Bellows & Components, Inc.,* 307 B.R. at 903(The Debtor's "attempt to forego arbitration of its disputes with the Union is, in actuality, the unilateral modification of the Agreement and, as such, is expressly prohibited by § 1113(f).").

## Application

█ In this case, the Court determines that the arbitration proceedings that were commenced pursuant to the Debtors' collective bargaining agreement with NUHHCE were not stayed by § 362(a) of the Bankruptcy Code upon the filing of the Debtors' Chapter 11 petitions.

The collective bargaining agreement that was entered by the parties does not appear in the record of this case. Nevertheless, the Debtors have not denied the existence of an arbitration clause in the agreement. Essentially, the Debtors appear to acknowledge that that their collective bargaining agreement with the Union contains a provision that requires them to arbitrate the disputes presented in the arbitration proceedings.

Consequently, the Court finds that the Second Circuit's decision in *Ionosphere* guides the disposition of the Debtors' Motions for Order to Show Cause. The arbitration proceedings were brought pursuant to a provision in the Debtors' collective bargaining agreement with the NUHHCE which obligated the Debtors to arbitrate the disputes presented in the arbitration proceedings. Consequently, the arbitration proceedings are not subject to the automatic stay. The application of the stay to the proceedings would allow the Debtors to unilaterally avoid their obligation to arbitrate the underlying disputes without satisfying the requirements of § 1113 of the Bankruptcy Code. *In re Ionosphere*, 922 F.2d at 993.

The Debtors contend that the Second Circuit's opinion in *Ionosphere* does not compel the conclusion that *all* arbitration proceedings related to a collective bargaining agreement are excepted from the automatic stay. Instead, the Debtors assert that *Ionosphere* stands only for the proposition that each arbitration proceeding must be evaluated on a case-by-case basis to determine whether the application of the stay would constitute a unilateral modification of the collective bargaining agreement.

To support their contention, the Debtors cite the Second Circuit's findings in *Ionosphere* that § 1113(f) is "circumstance specific rather than section specific," and that Congress could have expressly excepted all proceedings related to collective bargaining agreements from the automatic stay, if it had so intended. *Id.* at 991.

The passages recited by the Debtors, however, refer to a case-by-case evaluation of the effect of the stay on the parties' rights and obligations under their collective bargaining agreement. The purpose of the evaluation is to determine whether a stay of those rights and obligations would effectively modify the collective bargaining agreement in violation of § 1113. The passages do not refer to a case-by-case evaluation of the merits underlying each proceeding that arises under a collective bargaining agreement.

Further, after finding that the application of the stay should be adjudicated on a "case-by-case" basis, the Second Circuit then turned to the debtor's specific obligation to arbitrate found in the collective bargaining agreement before it.

█ The Court held that the stay of an arbitration proceeding initiated pursuant to an arbitration clause in a collective bargaining agreement would alter the agreement by allowing the debtor to avoid its obligation to arbitrate. *Id.* at 992. The Court's conclusion applies to all arbitration proceedings that are brought pursuant to a provision in a collective bargaining agreement that requires a debtor to arbitrate, "[A]n arbitration brought pursuant to a provision in a collective bargaining agreement is not subject to the automatic stay since its application would allow a debtor

unilaterally to avoid its obligation to arbitrate." *Id.* at 993. A debtor's agreement to arbitrate cannot be modified absent compliance with § 1113(f).

Consequently, once it is determined that a dispute is arbitrable, and that the debtor agreed to arbitrate the dispute in its collective bargaining agreement, the arbitration proceeding is not subject to the automatic stay. The Court is not required to evaluate the individual claims underlying an arbitration proceeding on a case-by-case basis, as suggested by the Debtors.

Finally, the Debtors assert that they complied with § 1113(b) of the Bankruptcy Code by sending letters to NUHHCE in which they offered to negotiate with the Union regarding the processing of the arbitrable claims. The record does not demonstrate, however, that all of the conditions set forth in § 1113 have been satisfied. Consequently, the provisions of the collective bargaining agreement cannot be unilaterally altered by the Debtors pursuant to § 1113(f) of the Bankruptcy Code.

### Conclusion

The Debtors seek a determination that NUHHCE and AAA have violated the automatic stay by pursuing certain arbitration proceedings that had been commenced pursuant to a collective bargaining agreement.

The Court finds that the arbitration proceedings are not stayed by § 362(a) of the Bankruptcy Code. The proceedings were brought pursuant to a provision in a collective bargaining agreement that required the Debtors to arbitrate the underlying disputes. Consequently, the application of the stay to the arbitration proceedings would allow the Debtors to unilaterally modify the collective bargaining agreement by avoiding their obligation to arbitrate. Such a result is not permitted by § 1113(f) of the Bankruptcy Code.

Accordingly:

**IT IS ORDERED** that the Motions for Order to Show Cause filed by the Debtors, Chestnut Hill Rehab Hospital, LLC, Chestnut Hill Rehab Center, LLC, and Carrington Place of Chestnut Hill, LLC, are denied.